JOHN T. GEDNEY et al., Appellants, *v.* MARLTON REALTY COMPANY, Respondent. (Actions 1 and 2.)

(Argued December 1, 1931; decided February 9, 1932.)

*Harold R. Medina, Eugene A. Sherpick, Myles B. Amend* and *John W. Jordan* for appellants.   Chapter 154

of the Laws of 1865, in purporting to transfer the vested interests of adult remaindermen without their consent, was violative of the due process clause of the Constitution of the State of New York. Where adult remaindermen are concerned, the statute, to be valid, must provide for their consent to the sale. (*Matter of Albany Street*, 11 Wend. 149; *Taylor* v. *Porter*, 4 Hill, 140; *Powers* v. *Bergen*, 6 N. Y. 358; *Brevoort* v. *Grace*, 53 N. Y. 245; *Matter of Easterly*, 202 N. Y. 466; *Matter of O'Donnell*, 221 N. Y. 197.) The failure of the adult remaindermen to appear and object was not a waiver of the constitutional provision, nor was it sufficient to constitute a consent to the sale of the property. (*Embury* v. *Conner*, 3 N. Y. 511; *Baker* v. *Bramam*, 6 Hill, 47; *Matter of Field*, 131 N. Y. 184.) The defense of estoppel by judgment is not available. (*Fish* v. *Vanderlip*, 218 N. Y. 29; *Rudd* v. *Cornell*, 171 N. Y. 114.)

*John Vance Hewitt, Morgan J. O'Brien, Jr., Henry A. Jones* and *Henry M. Bellinger* for respondent. The act of 1865 was valid. (*Matter of O'Donnell*, 221 N. Y. 197; *Matter of Bull*, 45 Barb. 334; *Leggett* v. *Hunter*, 19 N. Y. 463; *Westby* v. *Kiernan*, 2 Amb. 697; *Rice* v. *Parkman*, 16 Mass. 326; *Sohier* v. *Massachusetts General Hospital*, 3 Cush. 483; *Linsley* v. *Hubbard*, 44 Conn. 109; *Richardson* v. *Monson*, 23 Conn. 94; *Norris* v. *Clymer*, 2 Penn. St. 277; *People* v. *Draper*, 15 N. Y. 532; *Blakeley* v. *Calder*, 15 N. Y. 617; *Matter of Kneass*, 31 Penn. St. 87; *Minnesota Co.* v. *National Co.*, 3 Wall. 332; *Carroll* v. *Lessee of Olmsted*, 16 Ohio, 251; *Jackson* v. *Babcock*, 16 N. Y. 246.) The adult remaindermen waived any constitutional rights they may have had to oppose the sale, and, by their failure to appear and oppose, consented thereto. (*Blakeley* v. *Calder*, 15 N. Y. 617; *Matter of Field*, 131 N. Y. 184; *Matter of Kneass*, 31 Penn. St. 87; *Security Sav. Bank* v. *California*, 263 U. S. 282; *Matter of Cooper*, 93 N. Y. 507; *Gorham Manufacturing Co.* v. *Tax Comm.*, 266 U. S. 265;

*Baker* v. *Braman,* 6 Hill, 47.) The plaintiffs are estopped from recovering the land by the record in the accounting suit. (*Deeley* v. *Heintz,* 169 N. Y. 129; *Barber* v. *Ellingwood,* 137 App. Div. 704; *Tonnele* v. *Wetmore,* 195 N. Y. 436; *Hay* v. *Hillegass,* 275 Penn. St. 497; *Hull* v. *Hull,* 225 N. Y. 342; *Thorn* v. *De Breteuil,* 179 N. Y. 64; *Childs* v. *Childs,* 150 App. Div. 656; *Weintraub* v. *Siegel,* 133 App. Div. 677.)

CRANE, J. This action is brought in ejectment to recover two parcels of real property, known respectively as Nos. 108 and 110 West Eighteenth street, in the borough of Manhattan, city of New York, which were formerly owned by one John Tonnele, who died in 1846. By his will he devised property, including these premises, to his executors, the income therefrom after his wife's decease to be applied to the suitable education and support of his granddaughter, Rebecca T. Rice, during her minority, and the entire net income of the property thereafter to be paid to her during her lifetime. At the decease of the granddaughter he gave and devised the said premises to her lawful issue, but in case she died without issue, then to his son John, referred to in the case as John Tonnele, II.

The life interest or estate of the granddaughter, Rebecca T. Rice, continued until November 2, 1917 (seventy-one years), at which time she died without issue, never having had a child. The property thereupon passed to, or vested in possession of, the heirs of John Tonnele, II. These plaintiffs are the descendants of Eloise, who was one of the daughters of John Tonnele, II. He had died intestate in 1852, his children then inheriting his vested remainder in the premises in question. This remainder was subject to divestment only in the event that Rebecca T. Rice, granddaughter of John Tonnele, the elder, died leaving lawful issue. John Tonnele, II, at his death in 1852 left eight children, three of whom, Cecile Josephine,

Laurencine Salles and Isabella Zadina, died intestate, leaving no issue. The vested remainder of each of these three children being in each case an undivided one-eighth interest, passed upon their deaths to the other five children of John Tonnele, II. The interest of these plaintiffs, therefore, is derived in part from Eloise and in part from Cecile Josephine, Laurencine Salles and Isabella Zadina. The importance of these details of inheritance lies in the fact that the year 1865 is the important date for the determination of the rights of the parties to this action. At that time Eloise was an infant, while the other children were adults. The plaintiffs' interest, therefore, comes through those children of John Tonnele, II, who in 1865 were all adults, with the exception of the infant Eloise. Cecile Josephine and Isabella Zadina died in 1856 and 1860 respectively, the other six children inheriting their vested interest. In 1865, therefore, there were five adult surviving children and one infant, Eloise, who were entitled to the remainder after the death of Rebecca T. Rice, without lawful issue her surviving.

Taking ourselves back, therefore, to the year 1865, we find the Legislature, on March 20th of that year, enacting a law known as chapter 154 of the Laws of 1865, authorizing the Supreme Court of the State of New York upon the petition of Rebecca T. Rice, and upon notice as therein directed to all parties having an interest in the properties, to direct a sale of the premises " which are held in trust by the executors of said John Tonnelle, under the provision of the said will for the benefit of the said Rebecca T. Rice, or any part or parcel thereof, from time to time, as may be adjudged to be expedient and calculated to promote the interests of the said Rebecca T. Rice, or any persons whether yet in being or not, to whom or for whose benefit the trusts under the will of said John Tonnelle may inure after the death of the said Rebecca T. Rice. * * *

" § 3. The proceeds of such sale or sales may, under the

direction of the court, be applied by the said trustees to the payment of any debt lawfully incurred by them as such trustees, or the said Rebecca T. Rice, in respect to such trust property, and any assessments paid by her for the benefit of the said trust property, and in fulfilling the trusts declared or created in and by said will; and to the payment of all incumbrances, legally placed upon the same, and all taxes and assessments now due or to become due on said trust property, and the balance shall be invested upon said lots or other real estate in the city of New York, or in stock, bonds or securities of the state of New York, or the United States of America, to be held and disposed of for the benefit of such persons as may be or may become interested therein, under the provisions of said will, in accordance with the terms of said will."

Thereafter, upon the petition of Rebecca T. Rice, the life tenant, for the sale of four lots, including the premises here in question, Nos. 108 and 110 West Eighteenth street, an order of the Supreme Court was made directing the sale of the property in accordance with the terms and conditions of said statute. Notice to all the parties in interest, including those from whom the plaintiffs inherit, was given, a guardian for Eloise appointed, a reference had, testimony taken showing the conditions of the property and the necessity for the sale and all other steps complied with, so that in this action no attack is made upon the regularity of the proceedings leading up to the sale.

The defendants derive title through the purchaser at this sale, the property in the meantime having become very valuable in comparison with prices in 1865. As before stated, the plaintiffs have brought this action of ejectment, seeking to oust the defendants on the ground that chapter 154 of the Laws of 1865 was unconstitutional in that it authorized the sale of vested interests of living adult persons whose property could not legally be dis-

posed of without their consent. In *Powers* v. *Bergen* (6 N. Y. 358) and *Brevoort* v. *Grace* (53 N. Y. 245) it was held by this court that the Legislature has no power to authorize by special act the sale of private property, for other than public uses, without the consent of the owner, except in cases of necessity arising from infancy, insanity or other incompetency or the interests of those not in being. Where the parties entitled to future estates are under no disability to act for themselves the Legislature has no constitutional power to cause lands to be sold by special act. As the exceptions indicate, the Legislature can, by special act, authorize the sale of infant's property, vested or contingent, when it is for the benefit of the infant, and thus convert real property into personalty. (*Leggett* v. *Hunter*, 19 N. Y. 445.) The Legislature, by general act, had also provided by 2 Revised Statutes, page 315, title III, sections 1 to 95, for the partition of lands when held in joint tenancy or tenancy in common. In *Blakeley* v. *Calder* (15 N. Y. 617, 623) it was stated in an opinion by DENIO, J., that the remaindermen under these provisions could partition real property over the objection and against the will of the life tenant, a thing which cannot be done to-day according to section 1014 of the Civil Practice Act. (See, also, *Jackson* v. *Babcock*, 16 N. Y. 246, p. 249.)

The act of 1865, however, was enacted for the benefit of the life tenant, Rebecca T. Rice, and was not an authorization for an infant's proceeding for the benefit of Eloise Tonnele. " On the petition of Rebecca T. Rice, and her husband," the Supreme Court may authorize the sale of the trust property, if it be calculated to promote her interests. The infant, or her guardian, could not initiate any steps under this act. Neither was the subsequent sale made pursuant to the general partition statutes.

We come, therefore, face to face with the law as stated in *Brevoort* v. *Grace* (53 N. Y. 245), where the facts, fundamentally, were the same as these. Leffert Lefferts left a

will in which he devised one-half of the income of his farm to his wife, Maria Lefferts, and the residue of said income to his daughter, Mrs. Brevoort, during her life. The remainder of the farm to her issue in fee, but in case she should have no issue her surviving, then he devised such residue of the farm to such children of his brother John, deceased, as should be living at the time of his own death, share and share alike. Mrs. Brevoort was the only child of the testator. Six children of his brother John were living at his death but thereafter died leaving a great number of heirs, most of whom were adults. Mrs. Brevoort had but one child living, Henry L. Brevoort, over twenty-one. If Henry died before his mother without issue, these heirs of John, infants and adults, would take the property. The changes which had come in the development of Brooklyn made the property unprofitable — the taxes and assessments were greatly in excess of any income derived therefrom. Thereupon the Legislature enacted chapter 23 of the Laws of 1872, which provided that the Supreme Court might upon petition of Mrs. Brevoort authorize and order a sale in fee simple of so much of the property as was calculated to promote the interest of Mrs. Brevoort and those entitled to the estate at her death. The act is almost exactly like the one here in question, chapter 154, Laws of 1865. This court said: " The real question in the case is whether the Legislature has the power, by special act, to authorize and provide for the sale of the interest of known parties who have attained their majority and who are competent to act for themselves in real estate, and convert the same into personal, and provide for the investment and management of the proceeds without their consent, upon the ground that such sale would, in their judgment, promote the interest of such parties and others who are infants or who are not in being, and cannot, therefore, provide for the management of the property (pp. 250, 251). * * * The question then is as to the rights of the adult heirs of

the children of the testator's brother John. In the event of the death of Mrs. Brevoort, leaving no issue surviving, an event which is possible, the title to the premises would rest in part in these adult heirs as tenants in common with the other heirs, who are now infants, unless these rights are barred by the sale under the statute. The question is thus presented, whether the Legislature can, by a special statute, authorize the sale of lands to which adults, competent to act for themselves, have a contingent right, and thus cut off such contingent interest therein, should such events occur as would give the title in whole or part to those having such interest (pp. 253, 254). * * *

" It is insisted by the counsel for the respondent that the act in question should be sustained, for the reason that some of the heirs are infants, and that the Legislature has the power to authorize the sale of the interest of these infants. But this does *not* confer the power to authorize a sale of the interest of the adults without their consent " (p. 259).

This decision has become a rule of property in our State, cited and followed in subsequent cases (*Losey* v. *Stanley*, 147 N. Y. 560, 572; *Ebling* v. *Dreyer*, 149 N. Y. 460, 467; *Matter of Vanderbilt*, 172 N. Y. 69, 73; *Matter of O'Donnell*, 221 N. Y. 197, 203), and must be applied to the facts now presented. The longevity of the life tenant has given time for the property in question to greatly increase in value and may cause misfortune to those who have relied somewhat upon the lapse of years to qualify the effect of this law. Yet there it is and has been in the books for the past half century, well known to the conveyancers. The purchasers have merely taken those chances which attend the sale of any doubtful title.

The act of 1865, before us, provides for notice of Mrs. Rice's application for a sale of the property to the non-resident adults, and under a similar provision, the Supreme Court of Pennsylvania (*Matter of Kneass*, 31 Penn. St. 87, 91) has held that if after such notice the parties file no

objections, their assent will be conclusively presumed, and the title of the purchaser freed from their subsequent objection. If a statute be unconstitutional as attempting to sell a person's property for a private instead of a public purpose, *i. e.*, without due process, we do not see how the owner loses any rights because he fails to object or appear in proceedings which as to him are a nullity — not recognized by our law. Some constitutional rights may be waived, but no man can lose his property by mere silence when it is unlawfully taken from him. (*Embury* v. *Conner*, 3 N. Y. 511.)

Whether the Legislature would have the power, as has been held in some cases (*Linsley* v. *Hubbard*, 44 Conn. 109; *Sohier* v. *Massachusetts General Hospital*, 3 Cush. 483, 496), to authorize by a *general* act the conversion of adults' interest in real property, which had already vested, into personalty, we need not pass upon, as the question is not here and may never arise. So far as contingent or vested interests may come into being in the future, I take it that the Legislature has power to direct not only how such interest may be created or divested, but also how they may be sold and disposed of for the interests of all concerned, provided all have equal protection under the Federal Constitution and due notice. (See Real Prop. Law; Cons. Laws, ch. 50, §§ 105, 106 and 107; *Matter of O'Donnell*, 221 N. Y. 197.)

The accounting proceeding of *Tonnele* v. *Parish*, in 1919, to which these plaintiffs were parties, is not *res adjudicata* upon the point here raised. The substituted trustee was accounting after 1917 for the moneys it had received from its predecessor; the plaintiffs refused to receive any part of it, if it included the purchase price for the properties here in question, and specifically reserved their right to subsequently claim the law of 1865 unconstitutional and the sale of the real property illegal as to them. The referee and the court made no decision

upon the constitutionality of the act. (*Matter of Jackson*, 258 N. Y. 281.)

For the reasons here stated, the judgments below should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.