PHOENIX INSURANCE COMPANY, Appellant, *v.* WILLIAM GUTHIEL et al., Respondents.

Fourth Department, December 30, 1955.

*Stephen V. Lines* and *Donald F. Hathaway* for appellant.

*Thomas W. Sullivan* for Harold Shoemaker, respondent.

*Paul Reed Taylor* and *Charles H. Jennings* for Arthur Buckle, respondent.

*Samuel G. Brundage* for George Greenlea, respondent.

*Samuel J. Stagnitto* for William Guthiel and others, respondents.

*Gerald A. Gleason* and *Louis L. O'Brien* for Merchants Mutual Casualty Company, *amicus curiæ*.

VAUGHAN, J.  This is an appeal from an order and from the judgment entered pursuant thereto.  The order denied plaintiff's motion for summary judgment and directed " that judgment be entered declaring that under the terms of the plaintiff's liability insurance policy the said plaintiff is obligated to defend and indemnify the defendants, Arthur Buckle and Harold Shoemaker, from the claims " arising out of an automobile accident which occurred on July 26, 1953.  The facts are admitted.

The plaintiff insurance company issued and delivered to the defendant Arthur Buckle a policy of automobile liability insurance.  By the terms of the policy and the indorsements thereon, the insurance company agreed " To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the *ownership, maintenance or use of the automobile.*"  (Emphasis supplied.) The company also agreed to " defend any suit against the insured alleging such injury, sickness, disease or destruction

and seeking damages on account thereof, *even if such suit is groundless, false or fraudulent* ". (Emphasis supplied.)

On July 3, 1953, some twenty-three days prior to the accident in question, Arthur Buckle sold his Plymouth automobile to Harold Shoemaker, and on July 15, 1953, Buckle signed the transfer stub on the New York State registration certificate of said automobile and delivered the same to Shoemaker. At no time after July 3, 1953, did Arthur Buckle own, use, have in his possession or maintain the Plymouth automobile involved in the collision. It appears, however, that the defendant Buckle did not remove his license plates from the Plymouth car at the time of the sale and that they were still on the car when it became involved in the accident.

With the above undisputed facts as a background, we are called upon to determine whether the liability insurance policy covered the named insured (Buckle) and his transferee (Shoemaker) as of the date of the accident where the license plates of the named insured remained upon the car following the sale and up to and including the date of the accident in question. That determination requires the construction of a contract, the provisions of which seem to be clear and unambiguous. It provides that the insurer will indemnify the insured Buckle against legal liability caused by accident and arising out of the ownership, maintenance or use of a 1937 Plymouth automobile. Ownership and possession passed from Buckle to Shoemaker on July 3, 1953, and as the Special Term found, from that time forward Buckle "had no title, lien upon, or other interest, in the car." It follows from such finding that Buckle would not be liable but for the estoppel caused by the illegal use of his license plates. But the policy did not cover license plates; it covered a 1937 Plymouth automobile owned by the insured. However, respondents are not relying solely upon ownership in their effort to impose liability upon the insurer. They attempt to predicate liability upon Buckle's insurance company upon two grounds: (1) that Buckle is estopped from denying ownership of the Plymouth car because of his permitted use of his license plates upon the car following its sale, contrary to section 61 of the Vehicle and Traffic Law, and (2) by virtue of the standard omnibus clause in the policy extending coverage to any person operating the car with the permission of the named insured, such coverage inured to the benefit of the purchaser who was operating the car at the time of the collision.

Considering first the question of estoppel, there can be no doubt that Buckle is personally estopped to deny ownership as between himself and those persons injured by reason of the operation of the Plymouth car. The law in that respect is settled. (*Switzer* v. *Aldrich,* 307 N. Y. 56.) In view of the language of the insurance contract, the admitted facts and the findings of fact contained in the court's decision, we are not convinced that liability is imposed upon the insurance carrier in the absence of ownership solely by reason of the illegal use of the insured's license plates. (See *Employers Liability Assur. Corp.* v. *Sweatt,* 95 N. H. 31; *Merchants Mut. Cas. Co.* v. *Pinard,* 87 N. H. 473; *Dotson* v. *Malone,* 40 So. 2d 823, and *Byrd* v. *American Guar. & Liability Ins. Co.,* 180 F. 2d 246.) If liability there be, it is only by virtue of the provisions contained in section 59 of the Vehicle and Traffic Law. That section is headed '' Negligence of operator other than the owner attributable to owner.'' In this case, it is conceded that Buckle was not the owner of the car at the time of the collision. Absent ownership, it would seem to follow that the section is inapplicable unless it can be said that Buckle's inability to deny ownership in the actions brought against him by the injured parties operates to constitute the purchaser the actual or apparent agent of the insured. No claim is made that the car was being operated upon the business of the insured. When considering the word '' owner '', we must not forget that we are attempting to ascertain its meaning as used in a contract. We are not at liberty to put some strained construction upon it or give it some unusual interpretation but only the meaning that the contracting parties had in mind at the time they entered into the contract of insurance. The policy covers legal liability incurred by the use of the automobile by the named insured or by another with his permission. Concededly, the automobile was not being used at the time by the named insured or on his behalf, nor can it be successfully urged that it was being used with his consent, express or implied. The insured was not in a position to give his consent for he had already parted with both the title and possession of the car prior to the accident. Shoemaker's use of the car following its purchase was not by virtue of permission but of right based upon ownership. The definition of the word '' insured '' as set forth in the policy is as follows: '' With respect to the insurance for bodily injury liability and for property damage liability the unqualified word ' insured ' includes the named insured and also includes any person while using the automobile and any person or organization legally

responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission." Such language points up the fact that the contract of insurance affords coverage to the insured from an operational standpoint only, provided the use of the car is by the named insured or by some person with his permission or consent. By no stretch of the imagination or the language of the policy can it be said that the coverage contemplated by the policy was in any manner or degree enlarged by the illegal act of the insured in permitting the use of his plates in violation of section 61 of the Vehicle and Traffic Law. It was not the illegal use of the plates but rather the liability arising out of the negligent operation of the automobile that the insurance company agreed to indemnify the insured against.

On the record before us we reach the conclusion that the use by Shoemaker of the automobile purchased from Buckle does not come within the omnibus clause of the policy. Its use was not a permitted use of the car by the seller Buckle. Shoemaker had the absolute right to use the Plymouth as owner and the insurance company's liability cannot in our opinion be extended to a subject matter not covered by the policy merely because Buckle may be estopped from asserting he did not own the vehicle which in fact he did not own. The plaintiff insurance company had no part in the illegal acts which evoked the estoppel and should not be entangled in the web of any such estoppel.

The judgment and order appealed from should be reversed and plaintiff's motion for summary judgment granted, with judgment directed to be entered declaring that plaintiff is under no legal duty to defend or indemnify the defendants Buckle and Shoemaker from the claims of the other defendants.

McCurn, P. J. (dissenting). Depending upon presently undetermined questions of negligence and contributory negligence Mr. Buckle, the plaintiff's insured, may eventually have judgments against him in favor of one or more of the injured claimants. His liability will arise from the presumption of ownership and of operation upon his business or with his consent because of the presence of his license plates upon the car. (*Ferris* v. *Sterling*, 214 N. Y. 249, 253.) Although actually he has parted with his ownership he will be estopped from asserting that he is no longer the owner because of his failure to comply with section 61 of the Vehicle and Traffic Law. (*Switzer* v. *Aldrich*, 307 N. Y. 56; *Reese* v. *Reamore*, 292 N. Y. 292; *Buono* v. *Stewart*

*Motor Trucks,* 292 N. Y. 637.) His liability then under section 59 of the Vehicle and Traffic Law is the same as though he were still the owner of the car and it was being driven in his business or with his permission express or implied. Such is the liability contemplated in the policy issued by the plaintiff insurance company. The policy was not cancelled by either party and did not by its terms provide for automatic termination upon transfer of title to the automobile in question. It covered its named insured for any liability arising out of the ownership, maintenance or use of the automobile in question.

" Quite clearly, the policy covered any accident in which the vehicle was used or operated in such a way as to render the insured responsible." (*Abrams* v. *Maryland Cas. Co.,* 300 N. Y. 80, 85.)

The company did not limit its coverage so as to exclude any liability of its insured which the insured might have avoided had he complied with section 61 of the Vehicle and Traffic Law.

I feel that the insured, Mr. Buckle, is entitled under his policy to a defense by the company of any actions which may be brought against him because of the accident in question and that the company is also liable under its policy for any judgments which may be entered against Mr. Buckle, the insured, in such action or actions.

I concur in reversal of the judgment as to the defendant Shoemaker, but dissent and vote for affirmance as to the defendant Buckle.

All concur, except McCurn, P. J., and Wheeler, J., who concur in the reversal as to Shoemaker but dissent and vote for affirmance as to Buckle, in an opinion by McCurn, P. J., in which Wheeler, J., concurs.

Present — McCurn, P. J., Vaughan, Kimball, Wheeler and Van Duser, JJ.

Judgment and order reversed on the law and plaintiff's motion granted, with judgment directed to be entered declaring that plaintiff is under no legal duty to defend or indemnify the defendants Buckle and Shoemaker from the claims of the other defendants, without costs of this appeal to any party.