OPINION OF THE COURT
Ernest L. Signorelli, S.
In this contested executors’ accounting proceeding, the court has been requested to determine the amount of commissions to which the petitioners are entitled as fiduciaries of the decedent’s estate.
Jurisdiction has been obtained over the necessary parties to this proceeding, who have, by stipulation, waived a hearing and consented to submit this matter to the court for decision based upon an agreed statement of facts, and the following documentation: (1) the last will and testament of the decedent; (2) the intermediate account of the petitioners, and the decree, dated September 8, 1980, rendered in connection therewith; (3) petitions by two of the petitioners for an advance payment of commissions and the court orders, dated October 27, 1975, and September 29, 1976, respectively, approving said requests; (4) the instant account of the petitioners and the pleadings filed in response thereto; (5) a letter written by counsel for the petitioners dated October 31, 1983; and (6) memoranda of law.
*106 The decedent died, testate, on the 28th day of October 1974, survived by a spouse, 9 children and 27 grandchildren. His estate, at death, primarily consisted of stocks and bonds, cash and jointly held property. In particular, the decedent’s corporate holdings included 197,137 shares of stock in four corporations, of which he was a substantial owner with other members of his family, to wit, King Kullen Grocery Company, Jacul Realty Corporation, Cullen’s Service Station, Inc., and James Cullen Service Corporation.
With the exception of two specific cash bequests in favor of friends, the terms of the decedent’s last will and testament bequeath his tangible and real property to his spouse (arts third and fourth), and divide the balance of his estate into two separate trusts, a marital deduction trust and a residuary trust, for the benefit of his spouse and each of his surviving children (art seventh).
In addition to the powers granted to them by law, the pertinent provisions of article ninth of the decedent’s will confer upon his fiduciaries the discretionary authority to retain any property or investment owned by him at death, to sell at public or private sale, and to exchange or otherwise dispose of any stocks, bonds, securities or other personal property constituting part of his estate, to make payment of any legacy or distribute any portion of his estate, either in cash or in kind, and to exercise all powers in the management of his estate which any individual could exercise in the management of similar property owned in their own right.
Moreover, with respect to his interests in King Kullen Grocery Company, Jacul Realty Corporation, Cullen’s Service Station, Inc., and James Cullen Service Corporation, article twelfth of the decedent’s will specifically empowers the fiduciaries, in their absolute and uncontrolled discretion, with the authority to direct, control, supervise, manage or operate the business of such corporations, to determine the degree of their active participation in the management of such corporations, and to delegate all or any part of their powers with respect to same.
The decedent’s will was admitted by this court to probate on December 2, 1974, and letters testamentary and of trusteeship were issued thereon to his spouse, his son, his brother, the controller of King Kullen, and Manufacturers Hanover Trust Company as the fiduciaries nominated and appointed to act thereunder.
*107 Thereafter, on or about July 25, 1975, the decedent’s Federal estate tax return was filed reflecting his gross estate at death to be worth approximately $2,173,351. Significantly, schedule B thereof indicated the value of his stock in King Kullen Grocery Company, Jacul Realty Corporation, Cullen’s Service Station, Inc., and James Cullen Service Corporation to be $1,671,754.88, on the date of his death.
Upon audit, this value was increased by the I.R.S. to $3,631,329.50. The petitioners subsequently appealed this determination to the U.S. Tax Court where, pursuant to the terms of a so-ordered stipulation of settlement between the parties, dated April 1, 1981, the decedent’s interest in the four corporations was finally assessed at $1,712,191.39.
On October 27, 1975, a petition was filed by one of the executors of the decedent’s estate, requesting that he and two of his cofiduciaries be allowed an advance payment of commissions in the total sum of $28,600. A similar application for commissions totaling $15,000 was filed by the fiduciaries on September 29, 1976. Each of the said requests were subsequently granted by the court, upon the fiduciaries posting a bond in the applicable amounts, and the payments pertaining thereto were thereafter made on November 5,1975 and September 29,1976, respectively.
The decedent’s spouse died on May 10,1978. As a consequence thereof, an intermediate account was filed by the executors of the decedent’s estate for the period commencing with the date of the decedent’s death (Oct. 28,1974) and ending with the date of death of his spouse.
Using the values of assets as originally reported on the decedent’s Federal estate tax return, schedule A of said account reflects the amount of principal received by the fiduciaries as $1,895,908.46, inclusive of the $1,671,754.88 of stock owned by the decedent in King Kullen Grocery Co., Jacul Realty Corporation, Cullen’s Service Station, Inc., and James Cullen Service Corporation.
Executors’ commissions, as shown on schedule J, incorporated these figures and were calculated, on the basis of the 1976. statutory rates set forth in SCPA 2307, to amount to $67,809.39. The final page of schedule J concludes with the following proviso with respect to the compensation, award and payment of said commissions: “The Executors do not seek payment of their commissions on this accounting proceeding and reserve the right to claim them on a future accounting proceeding.”
*108 As a consequence of this addendum, the court’s decree, dated September 20,1980, failed to contain a decretal paragraph as to executors’ commissions, and ordered the account, as filed and adjusted, final insofar as the estate of the decedent’s spouse was concerned, and intermediate with respect to the remaining fiduciaries.
The instant accounting proceeding was filed on December 6, 1982. The various schedules thereof reflect an upward adjustment of the value of the decedent’s shares in King Kullen Grocery Co., Jacul Realty Corporation, Cullen’s Service Station, Inc., and James Cullen Service Corporation to the values as stipulated to, as aforesaid, by the petitioners and I.R.S. before the Tax Court in April 1981.
Commensurate with this revaluation, schedule J of the account sets forth and, in part, recomputes total executors’ commissions due upon the assets of the estate, from the date of the decedent’s death to the date of the account, to be approximately $253,136.
The said commissions were calculated on the basis of the amended statutory rates set forth in SCPA 2307, effective July 27, 1981.
On May 25, 1983, the court appointed a guardian ad litem to represent the infant beneficiaries of the decedent’s estate in the context of the aforesaid accounting proceeding. Subsequent thereto, the guardian filed objections to the petitioners’ account contesting the propriety of the commissions sought by the fiduciaries. More specifically, the guardian contends that the commissions shown on schedule J of the account are excessive on the grounds that: (1) they fail to reflect a credit for the commissions previously set forth on schedule J of the petitioners’ intermediate account; (2) they are calculated on the basis of the amended statutory rates with respect to assets received and distributed by the petitioners prior to the date of their intermediate account; (3) they are predicated upon an improper valuation of estate assets; and (4) they encompass assets and an award for services performed by the petitioners, which may not properly form the basis for fiduciary compensation.
Paramount to the court’s resolution of the guardian’s objections is a determination of the effect of the decree entered in the intermediate accounting proceeding.
Citing, as authority, the decisions in Matter of Barrett (124 Misc 699 [1925]) and Matter of Abbott (187 Misc 264 [1946]), the guardian ad litem maintains that said decree was a final adjudication of executors’ commissions, and, as such, operates as a bar *109 herein to the petitioners’ request for additional compensation with respect to the period embraced by the intermediate account. On the other hand, the petitioners contend that inasmuch as said decree never specifically determined their commissions for the interim period in question, it has no conclusive effect upon their entitlement to increased compensation in this proceeding at the present statutory rates.
Res judicata is grounded upon the premise that once a person has been afforded a full and fair opportunity to litigate a particular issue, he may not be permitted to do so again. The doctrine, as defined in treatise and case law, stands for the proposition that an existing final judgment, rendered upon the merits, by a court of competent jurisdiction, is conclusive, upon the parties and their privies, in any subsequent action, as to the issues of fact and questions of law necessarily decided therein. (9 Carmody-Wait 2d, NY Prac, Judgments § 63:196; Gramatan Home Investors Corp. v Lopez, 46 NY2d 481 [1979]; Matter of Carmen Y. V., NYLJ, Oct. 4,1983, p 14, col 1 [Fam Ct, Fogarty, J.].) As applied to a Surrogate’s Court accounting proceeding, the doctrine has the effect of rendering every material matter embraced within the issues which were expressly litigated and determined in the proceeding, as well as those matters which were comprehended and involved in the issues determined, whether or not actually litigated or expressly considered by the court, conclusive evidence against the parties over whom jurisdiction was obtained, and all persons deriving title from such persons. (Matter of Grace, 62 Misc 2d 51 [1970]; Matter of Williams, 1 AD2d 102 [2d Dept 1956]; Matter of Jones, 13 Misc 2d 678, affd 8 AD2d 829 [2d Dept 1959]; 4A Warren’s Heaton, Surrogates’ Courts § 402, 13.)
Corollary to, but distinguishable from the doctrine of res judicata, is the doctrine of collateral estoppel, which operates upon distinct and different causes of action, to preclude relitigation of only those matters actually and necessarily determined in a previous suit. (9 Carmody-Wait 2d, NY Prac, Judgments § 63:205; Gramatan Home Investors Corp. v Lopez, supra; Matter of Carmen Y. V., supra.) In ascertaining the issues necessarily decided by a prior judgment, courts have been guided by a variety of factors, central among which are the nature of the causes of action previously asserted, and the manner and extent to which the result embodied in the prior adjudication has disposed of the material elements of the present dispute between the parties. (O’Connor v G & R Packing Co., 74 AD2d 37 [2d Dept 1980].)
*110 Because of the serious consequences stemming from the application of res judicata or collateral estoppel to a pending lawsuit, courts have exercised strict scrutiny whenever either one of these defenses is raised. (Gramatan Home Investors Corp. v Lopez, supra.) In this regard, the focus is upon the pleadings and ultimate decree rendered in the previous proceeding. (Matter of Grace, supra; 4A Warren’s Heaton, Surrogates’ Courts § 402, 113 (a); Matter of Jones, supra; Matter of Balsam, 58 Misc 2d 672 [1968].)
Judging from these principles, the court finds no basis for invoking either the doctrines of res judicata or collateral estoppel to the petitioners’ claim for commissions herein. Neither the intermediate account of the petitioners, nor the decree entered in the proceeding, can be construed as a judicial determination of the fiduciaries’ commissions for the period in question. Contrary to the guardian’s assertions, the court is of the opinion that the computations set forth in schedule J of the account were .intended by the petitioners to be informational rather than binding. (See, Matter of Knapp, 141 Misc 540 [1931].) Indeed, by reserving their rights to claim compensation to a future accounting, the petitioners expressly removed any consideration of their commissions from the purview of the intermediate proceeding, as, in effect, the court’s decree of September 1980, confirmed by omitting a decretal paragraph with respect thereto. (See, Gedney v Marlton Realty Co., 258 NY 355 [1932].)
Matters excluded from consideration in a prior suit cannot be removed from a later suit under the doctrine of res judicata. (Salwen Paper Co. v Merrill Lynch, Pierce, Fenner & Smith, 72 AD2d 385 [2d Dept 1980].) Thus, a fiduciary will not be estopped from requesting additional commissions where he has not asked for commissions on a former accounting, or been awarded any in a judicial decree. In fact, it is only where the prior decree specifically recites an award of commissions, will it be deemed conclusive against a fiduciary as to the amount thereof. (See, Matter of Barrett, supra.)
Accordingly, the law clearly sustains the petitioners’ right to be compensated at the present statutory rates, upon the values indicated in their account. (Matter of Barker, 230 NY 364, 372 [1921].) Indeed, the fees of a fiduciary are to be fixed in accordance with the rules and law which prevail at the time when they are awarded, regardless of what the statutory scheme was at the time his administration was commenced. (Supra; see also, Lipman, 1969 Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 2307, 1984-1985 *111 Pocket Part, p 59; Matter of Hoff, 186 Misc 684, affd 270 App Div 891, affd 296 NY 650 [1946] [estate tax value of securities used as basis for computing commissions]; Matter of Bourne, 55 Misc 2d 364 [1967]; Matter of Pratt, 172 Misc 756 [1939] [commissions allowable on unrealized increases in the value of principal received]; Matter of Roney, 148 Misc 70 [1933] [fiduciaries entitled to commissions on values of securities distributed in kind to residuary beneficiary, valued on their date of distribution]; see also, Matter of Curtiss, 15 Misc 545 [1896].)
Finally, the court rejects the guardian’s contentions describing the nature of the disposition of the decedent’s interest in King Kullen as being a specific bequest, and not subject to commissions. As a general rule, courts will hold testamentary bequests to be general rather than specific, particularly where the testator has expressed an intent that his executor perform managerial functions with respect to same. This is especially true in instances where the will contains a bequest of stock in a publicly traded corporation, absent a showing, to the contrary, that the decedent intended to segregate the shares from the other assets of his estate. (In re Devlin’s Estate, 189 NYS2d 415 [1959].) Indeed, “ ‘[i]n those cases in which legacies of stocks or shares in public funds have been held to be specific, some expression has been found from which an intention [could be inferred] to make the bequest of the particular shares [in question]. Where, for instance, the testator has used such language as “my shares”, or any other equivalent designation, it has been held sufficient.’ ” (Matter of Mahoney, 88 Misc 2d 499, 501 [1976].)
In distinction to the facts in Matter of Volckening (75 Misc 2d 221,228 [1973]), relied upon by the guardian ad litem in support of his argument, wherein the testatrix, by way of a separate paragraph, in her will, bequeathed “ ‘all my stock in Volckening, Inc. * * * in trust * * * under the following terms and conditions’ ”, the will in the instant case disposes of the decedent’s interest in King Kullen by way of the residuary clause, with no specific mention of the name of the corporation, or his shares of stock therein. Moreover, while the court recognizes that King Kullen was and still is substantially owned by the Cullen family, it nevertheless still continues to be a publicly traded company, subject to the dispositive rules of construction set forth above.
Accordingly, the objections of the guardian ad litem are dismissed in their entirety, and the account of the petitioners is settled as filed.