OPINION OF THE COURT
Millard L. Midonick, S.
In this executors’ accounting proceeding, the beneficiaries of two residuary trusts, who are the decedent’s daughters and grandchildren, filed an objection with respect to all losses incurred as a result of the purchase by the executors of stock "before sufficient funds had been raised and set aside in the form of cash or cash equivalents * * * to meet * * * known or reasonably anticipated cash requirements for the payment of all obligations of the estate”. The executors have moved for summary judgment dismissing the objection on the ground that it is insufficient in law. The objectants have cross-moved for partial summary judgment sustaining the objection with respect to liability for surcharge, subject to further proceedings to determine the amount of damages.
The applicable facts are not in dispute and can be summarized as follows: The decedent died on January 14, 1973, leaving assets of approximately $10,500,000, all but $37,500 of which consisted of cash and securities. The executors-trustees are a national bank, the decedent’s attorney, and the decedent’s nephew, an experienced securities investor formerly associated with a stock brokerage and investment banking firm. Eight days after death, the executors estimated their total cash requirements to be approximately $7,500,000 including debts of about $1,000,000, estate taxes of $5,125,000, attorneys’ fees and executors’ commissions of $825,000, funeral and administration expenses of $13,000, cash bequests of $477,000 and a preresiduary trust of $70,000. The estate at that time had $1,300,000 in cash or cash equivalents and the executors proceeded to sell securities to raise cash. By February 23, 1973, about a month after issuance of letters testamentary, approximately $4,000,000 of sales proceeds were realized and the estate had approximately $5,400,000 on hand in cash or cash equivalents, such as Treasury bills, certificates of deposit, and commercial paper. The executors reviewed the timing of the payments of estimated projected liabilities and, after taking into account that certain estate obligations could be deferred, such as executors’ commissions, legal fees and *540 part of the New York State estate tax, and after deciding that the preresiduary trust would be funded by distributing certain marketable securities in lieu of cash, it was concluded that the shortage in short-term cash requirements in February, 1973 amounted to approximately $1,100,000. By the end of March, 1973, additional sales of securities totaling $90,000 were made, further reducing the estimated short-term cash requirements. By June, 1973, the assets in the estate had declined in value by a total of $670,000, which consisted of $170,000 of realized losses and $500,000 of unrealized losses. By use of the alternate valuation date for estate tax purposes, the cash requirements of the estate were further reduced by approximately $470,000, resulting in a shortage on July 1, 1973 of $525,000 for short-term cash requirements. In August, September, and October, 1973, the executors sold an additional amount of securities totaling $1,385,000, thus meeting all of their short-term cash requirements and part of their long-term cash requirements as well. These securities which were sold were ones originally in the estate at the decedent’s death, not securities which the executors purchased.
Back in March of 1973, five weeks after the executors qualified, they began an analysis and review of the estate’s investments. At that time the estate owned approximately 19 different marketable securities having an approximate market value of $4,700,000. Of this amount, two securities, Sears Roebuck and Merck, represented a value of over $2,000,000, and the executors were concerned about the heavy concentration in those two securities. The executors decided to diversify the portfolio in order to reduce the holdings in the two securities. The executors then sold an additional $900,000 of securities in order to diversify the estate’s holdings. From March, 1973 through October, 1973, the proceeds of these latter sales were used to purchase eight securities after consultation with investment experts and with said view towards portfolio diversification. Among the stocks purchased, all of which are listed and reputable companies, were Mobil Oil, Howard Johnson, American Express, International Telephone and Telegraph Company, American Home Products, Continental Telephone, Eastman Kodak and Exxon.- The bulk of these securities were ultimately distributed to the trustees of the residuary trusts, and they obviously are suitable for long-term trust portfolios.
The executors also contend that the purchases of the above *541 eight securities were based on their consideration of the long-term investment objectives of the residuary trust beneficiaries, the objectants herein, as well as diversification of securities. These securities are being held by the trustees and may never result in any actual loss to the trust.
The objectants contend that the purchases of the above-mentioned stocks were improper, imprudent and illegal because such purchases were made before sufficient funds had been raised and set aside by the executors in cash or cash equivalents to meet the estate’s known or reasonably anticipated cash requirements. This is the sole basis for the objection and no objection is made with respect to the nature of any specific security purchased. The only issue before the court is whether the executors violated a fiduciary duty by improvidently investing in stocks before raising all of the estate’s cash requirements. The general decline in the securities market, the objectants urge, resulted in an unrealized loss of about $670,000 in the purchased securities, against a reduction in estate taxes in the neighborhood of $470,000, for a net loss of about $200,000 which would have been available to augment the trust if the purchases had not been made.
If such loss had been suffered after the cash requirements of the estate had been paid, no ground for objection could be made. If a gain had favored the trust before the cash requirements of the estate had been paid, obviously no objection would be levelled. Had the executors acted more conservatively by investing in interest bearing cash equivalents maturing when estate taxes were needed, more would have been available for the trust principal. However, had the securities market risen during those few months, instead of the actual decline, the trust estate would have suffered by requiring higher prices for appreciated equity securities to serve the interests of remaindermen. So, while this court would prefer conservative handling of principal needed for known cash deadline requirements such as estate taxes, we cannot in the posture of this estate substitute our judgment by overruling the somewhat less conservative effort to enhance the trust estate by executors who employ their expert efforts to enlarge that trust estate with "blue chip” securities. It is almost always easy to be absolutely safe, but for that we hardly need expert fiduciaries.
The objectants contend that the executors, by selling securities before the alternate valuation date for Federal estate tax *542 purposes, lost the leverage of a decline in value of these securities after the sale but prior to the alternate date. This may be so. However, this loss in estate tax savings was compensated for by the savings realized by a timely sale of the securities in a falling market. As stated by the attorneys for the executors in a supplemental affidavit, "In a declining market the sale of securities at prices higher than the value on the alternate valuation date represents a 100% savings of the differential since the tax is less than 100%.”
To put the issue another way, the investments objected to were obviously prudent for long-term purposes, but somewhat less than perfect for short-term purposes. The objectives of the executors were long-term as well as short-term, and the investments were of the highest order except for the timing problem. Summary judgment, therefore, in favor of fiduciaries is appropriate in these circumstances.
The only statutory support which the objectants advance is SCPA 1811 (subd 1) which provides that funeral and administration expenses "shall be paid out of the first moneys received” by the fiduciary. This section places a duty on the executors to pay funeral and administration expenses before making distributions or preferring any other claims. However, the statute is not intended strictly to require the executors to retain cash or cash equivalents and refrain from diversifying or investing for the estate prior to the payment of such expenses. All of such expenses and all other cash requirements have been timely met by these executors.
It should also be noted that the will of the decedent authorizes the executors to retain investments and to make new investments. More importantly, however, is the fact that the purchased securities were not sold to meet the tax obligations and expenses of the estate. These purchased securities were distributed to the trustees for long-term holding, and other securities of the estate, which were owned by the decedent at death, were sold by the executors to meet these obligations and expenses, and these sales were made pursuant to an organized plan of liquidation which the executors instituted shortly after death. If the purchased stocks had been needed to be sold to meet an impending tax deadline, it may have been improper to purchase such securities, but that is not the case here. These executors were not using funds of the estate which were needed to pay taxes when they purchased the eight named securities for diversification. Instead, they were *543 investing estate funds for ultimate trust purposes, which is a proper executorial function.
Ordinarily, an executor may retain funds only for the period necessary to liquidate the assets, pay the debts and distribute the remainder. However, during the time reasonably required for administration, he may invest the funds in legal investments (2 Harris, New York Estates Practice Guide [3d ed], § 436). The applicable rules and cases are concisely stated in Matter of Buck (184 Misc 29, 36, affd 267 App Div 328) as follows: "A distinction must also be made between the duties of an executor or administrator and those of a trustee. An executor or administrator is under a duty to distribute the assets of the estate or their proceeds after the payment of debts, taxes and funeral and administration expenses. However, it is not entirely correct to say that during the period reasonably required for administration an executor, as such, has no authority to make investments. (Decedent Estate Law, § 111 [now EPTL 11-2.2]; Villard v. Villard, 219 N. Y. 482; Stark v. National City Bank, 278 N. Y. 388.) However, in any case where estate assets may be invested a fiduciary is bound to employ that degree of care which prudent men of discretion employ in like matters of their own. (King v. Talbot, 40 N. Y. 76; Matter of Clark, [257 NY 132].) So long as this standard of care is observed, a fiduciary who may invest estate funds will not be held liable for any resulting loss, provided the investments be made in the authorized classes of securities. (Matter of Clark, supra.)”
The objectants also allege that the executors were imprudent in their conduct. The court does not agree with this conclusion on the basis of these agreed upon facts. This court has recently discussed the prudent person rule and the conduct test of fiduciary responsibility in Matter of Morgan Guar. Trust Co. of N. Y. (89 Misc 2d 1088). The rule is clear that prudence is tested at the time of the investment decision, not from the vantage point of hindsight (Matter of Hubbell, 302 NY 246; Matter of Bank of N. Y, 35 NY2d 512). A fiduciary should not be charged with loss or depreciation of securities if he has exercised such prudence and diligence in their care and management as prudent men employ in their own affairs (EPTL 11-2.2, subd [a], par [1]; Warren’s Heaton, Surrogate’s Courts [6th ed], § 341, par 2; McCabe v Fowler, 84 NY 314; Matter of Clark, 257 NY 132). It may be that these fiduciaries —a bank, an attorney and an experienced investor — should be *544 held to a very high or relatively high standard of conduct (State’s Changing Prudent-Person Rules, NYLJ, Nov. 15, 1976, p 1, col 2, authored by the writer of this opinion; Surrogate Laurino, Investment Responsibility of Professional Trustees, 51 St John’s L Rev 717), but that is not to say that they must be made insurers of any losses sustained where imprudence is not alleged and proven. In this case, no specific allegations of imprudence are made, except for the contention that no investments can be made, except in cash equivalents, before all early cash requirements have been met, a ground with which the court cannot agree in this case. There is no allegation or proof that any of the purchased stocks were speculative in nature or that the executors acted without expert investment advice. (Cf. Matter of Berg, 91 Misc 2d 939.)
In view of the foregoing, the motion for summary judgment favoring the executors is granted and the cross motion for summary judgment is denied. Submit order on notice. The remaining objection with respect to legal fees will be determined upon the settlement of the decree on accounting.