■ In the Matter of the Estate of JOSEPH V. BURNS, Deceased. BRIAN E. LIND, as Administrator C. T. A. of the Estate of JOSEPH V. BURNS, Deceased, Respondent; KATHERINE B. BUCKLEY, Appellant, and THOMAS M. BURNS, Intervenor-Respondent. (And Three Other Proceedings.)—Kane, J. Appeals (1) from a decree of the Surrogate's Court of Broome County (Thomas, S.), entered November 21, 1985, which, *inter alia*, directed respondent to pay over to petitioner the sum of $177,699.68, (2) from a supplemental decree of said court, entered December 11, 1985, which awarded counsel fees to intervenor, and (3) from an order of said court, entered December 30, 1985, which, upon reargument, awarded disbursements to intervenor.

Lawrence Burns was the father of respondent, Katherine B. Buckley (hereinafter Buckley), and intervenor, Thomas M. Burns (hereinafter Burns). Joseph V. Burns (hereinafter decedent), was Lawrence Burns' brother. Decedent was a veteran of the Navy and Marine Corps. Since World War I, and until the time of his death on May 10, 1983, at 85 years of age, decedent was in and out of various Veterans Administration hospital facilities, suffering from 100% service-connected schizophrenia. Decedent received a 100% disability check every month.

When he was not in a hospital, decedent lived with Lawrence Burns in Susquehanna, Pennsylvania. Lawrence Burns took care of decedent's finances. Decedent's original will divided his estate equally among Buckley, Burns and Lawrence Burns; it appointed Lawrence Burns executor with Burns as alternate executor.

Lawrence Burns died March 8, 1979. At that time, decedent was living in a family care home run by Mr. and Mrs. Wayne Hills in the community of Harpursville, Broome County. Buckley lived in the City of Binghamton, Broome County, while Burns lived in Florida.

On March 8 or March 9, 1979, Buckley contacted her attorney, Salvatore A. Fauci. Pursuant to their telephone conversation, Fauci prepared a power of attorney which designated Buckley attorney-in-fact for decedent. The next day, Buckley and Fauci traveled to Harpursville to call on decedent at the Hills' home.

During the visit in Harpursville, Buckley apparently informed decedent of his brother's death. Fauci then explained

the purpose of the proposed power of attorney to decedent. Although Fauci admitted that he paraphrased the instrument rather than reading it word for word, he stated that he did tell decedent that the power of attorney, once executed, would allow the designated attorney-in-fact to "do anything in your name". He explained that "that person" could sign checks, pay bills, and make withdrawals from decedent's bank accounts. Fauci asked decedent if he understood what Fauci had been saying and decedent answered "yes". Decedent signed the power of attorney.

While he was in Harpursville, Fauci asked decedent whether he wished to change his existing will because of the death of Lawrence Burns. Fauci suggested that decedent could change the executor (who, after Lawrence Burns' death, was Burns), or change the beneficiaries. Fauci testified that decedent pointed to Buckley and said, "I want her to be in charge." With respect to changing the beneficiaries, decedent said, "Leave it that way for now." Thus, when decedent executed a new will the following month, he appointed Buckley executrix of the will and left his estate equally to Burns and Buckley.

This appeal and the underlying litigation (130 Misc 2d 317) center around several of decedent's bank accounts. In its decree, Surrogate's Court labeled these accounts Nos. 1 through 7 and this decision will use the same system.

At the time of Lawrence Burns' death, decedent had several bank accounts which were owned jointly by decedent and Lawrence Burns. Decedent also had accounts in his name alone. Using her power of attorney, Buckley withdrew the funds from decedent's original accounts and deposited them in new accounts, which new accounts were opened either "jointly", bearing the names of decedent and Buckley, or "in trust for" Buckley. Buckley withdrew the funds from all of the new accounts soon after decedent's death.

Petitioner, as administrator *c.t.a.* of decedent's estate, sought to compel Buckley to deliver the money she withdrew from the accounts back to decedent's estate. At the conclusion of testimony in the ensuing trial, Surrogate's Court granted petitioner's motion for summary judgment with respect to account No. 1 and granted petitioner's motion for a directed verdict on accounts Nos. 2, 3, 4 and 5. The court denied petitioner's motion as to accounts Nos. 6 and 7, however, because those accounts had signature cards which did bear decedent's signature. The jury returned a verdict in favor of

petitioner with respect to accounts Nos. 6 and 7. Buckley appeals from the decree of Surrogate's Court which ordered her to pay to petitioner $177,699.68, from a supplemental decree of Surrogate's Court which provided for the fees of Burns' counsel to be paid one half from the general funds of decedent's estate and one half from Buckley's share in decedent's estate, and from a later order which, upon reargument, also granted disbursements to Burns.

We affirm. First, we note that Buckley does not dispute the grant of summary judgment with respect to account No. 1. Next, we find that upon the instant record, Surrogate's Court properly granted petitioner's motion for a directed verdict with respect to accounts Nos. 2, 3, 4 and 5. The record fully supports the court's conclusion that accounts Nos. 2, 3, 4 and 5 had been created solely by Buckley, using her power of attorney for decedent. Further, Buckley was unable to present evidence that she had acted pursuant to decedent's directions when she established the accounts.

Buckley's argument that Surrogate's Court erred because, in fact, the four accounts were merely renewals of prior accounts which had been authorized by decedent is without merit. Contrary to her assertion, the record indicates that Buckley created new accounts and did not merely renew the original accounts. Further, the signature cards for the four accounts in question give no indication that decedent directed Buckley to open the new accounts. In fact, the record contains no evidence that decedent was even aware of their existence.

We reject Buckley's contention that decedent made an inter vivos gift of the accounts to her. Buckley wholly failed to establish that decedent intended for her to have the accounts. To the contrary, the record reveals that decedent wished for his estate to be divided equally between Buckley and Burns.

We now turn to a discussion of accounts Nos. 6 and 7, which were joint bank accounts with signature cards actually bearing decedent's signature. As noted above, Surrogate's Court refused to direct a verdict on these accounts. With respect to these two accounts, Buckley contends that Surrogate's Court erred by not charging the jury with the presumption contained in Banking Law § 675 (b). This contention, however, should be rejected. Neither account contained language of survivorship on the signature cards and, accordingly, the presumption under Banking Law § 675 (b) was not applicable (see, Matter of Camarda, 63 AD2d 837, 838; see also, Matter of Hollweg, 67 AD2d 1001, 1002; Matter of Rider, 16 AD2d 1014).

In its supplemental decree, Surrogate's Court awarded $31,000 in counsel fees to Burns' attorneys. The award was to be allocated one half from the general funds of the estate and one half from Buckley's share in the estate. Buckley protests that such award was "contrary to law and oppressive". We find no error.

Burns, as an intervenor, had the right to an award of counsel fees. The general rule is that, where legal services have been rendered for the benefit of the estate as a whole, resulting in the enlargement of all the shares of all the estate beneficiaries, reasonable compensation should be granted from the funds of the estate (see, Matter of Bellinger, 55 AD2d 448; see also, SCPA 2110). Due to Burns' efforts, decedent's estate increased from zero to $145,810.24. Accordingly, Burns and Buckley, the only two beneficiaries of decedent's estate, both stood to receive greater sums from the assets of the estate *in their capacities as beneficiaries.* This being the case, the test for awarding counsel fees was satisfied. Further, under the circumstances of this case, we find that Surrogate's Court did not abuse its discretion by ordering that one half of the award be paid from Buckley's share. As Surrogate's Court opined, "simple justice dictates that Katherine Buckley should bear the greater share of the financial burden placed upon the estate by her wrongful withholding of assets".

We have reviewed Buckley's remaining contentions with respect to the decree, supplemental decree and order upon reargument, and find no error. We thus affirm.

Decree, supplemental decree and order affirmed, with costs payable from the estate. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.