■ In the Matter of the Estate of ETHEL B. ATKINSON, Deceased. FIRST NATIONAL BANK OF CORTLAND et al., as Coexecutors of ETHEL B. ATKINSON, Deceased, Respondents-Appellants; YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF CORTLAND, NEW YORK, INC., Appellant-Respondent.—Harvey, J. Cross appeals from a decree of the Surrogate's Court of Cortland County (Kepner, Jr., S.), entered January 5, 1988, which, *inter alia,* settled the accounts of petitioners as coexecutors of the estate of Ethel B. Atkinson.

This is a proceeding for judicial settlement of the accounts of the coexecutors of the estate of Ethel B. Atkinson, who died testate in April 1979 leaving an estate of approximately $500,000 in bank accounts, marketable securities and jewelry. Decedent's will provided for a single bequest of her personal effects and household furnishings to her niece, and the residue was to be distributed as follows: 75% to 27 different individual legatees and 25% to 10 separate charitable organizations including respondent, the Young Women's Christian Association of Cortland, New York, Inc. The will was admitted to probate in May 1979 and letters testamentary were issued at that time to petitioners, Morris C. Fitts and the First National Bank of Cortland, as the named coexecutors.

In January 1981, petitioners filed an accounting of the estate with Surrogate's Court. As a result of objections filed by some of the residuary beneficiaries including respondent, petitioners filed an amended accounting in February 1982 and a second amended accounting reflecting the period through

February 1987 was also subsequently filed. Respondent filed objections to both amended accounts. Ultimately, in a January 1988 decree, the court, *inter alia*, denied all of respondent's objections to petitioners' amended accounts except one and settled and approved those accounts. These cross appeals followed.

Initially, respondent asserts that Surrogate's Court erred in determining that decedent's will contained a clear and unambiguous direction to pay estate taxes prior to the distribution of the residuary estate. Respondent argues that the will is ambiguous and therefore the taxes should have been apportioned against the noncharitable residuary beneficiaries pursuant to EPTL 2-1.8. The pertinent paragraphs of the will read, in part, as follows:

"THIRD. All the rest, residue and remainder of my estate, both real and personal, wheresoever situate, which I may own, die seized of or be entitled to at the time of my death, *which remains after all debts, administration expenses and taxes, of every nature, are paid in full,* I give, devise and bequeath in the following manner * * *.

"FOURTH. *I direct that all estate, transfer, inheritance and like taxes,* including interest and penalties, imposed or assessed by the federal or state governments or any other duly constituted authority upon or with respect to property passing under this, my Will, and any property passing outside of my Will, which is required to be included in my taxable estate, *be paid out of my testamentary residuary estate and that no portion thereof shall be apportioned to or collected from any legatee, devisee or other recipient of property constituting part of my taxable estate*" (emphasis supplied).

In our view, there is no ambiguity in these provisions. EPTL 2-1.8 (c) provides that the tax shall be apportioned "[u]nless otherwise provided in the will". Although there is a strong policy favoring apportionment *(see, Matter of Shubert,* 10 NY2d 461, 471), that policy gives way where the clear and unambiguous wishes of the testator direct otherwise *(Matter of Cord,* 58 NY2d 539, 545; *Matter of Dewar,* 62 AD2d 352, 354; *see, Matter of Collia,* 118 AD2d 778, 779). It is axiomatic that a decedent's intent should be determined, where possible, from the four corners of the will *(Matter of Cord, supra,* at 544). Here, the third paragraph expressly provides that the residuary estate means the estate "after all debts, administration expenses and taxes, of every nature, are paid in full". The fourth paragraph then further directs that all taxes are not to

be apportioned to or collected from any beneficiary under the will. Taken together, these provisions unambiguously direct against apportionment and Surrogate's Court correctly rejected this objection.

Next, respondent argues that petitioners diminished the estate and violated their obligation as fiduciaries under EPTL 11-2.2 (a) (1) by prematurely selling decedent's securities shortly after the will's admission to probate and imprudently reinvesting the proceeds in several certificates of deposit and bonds. We disagree. It is well established that the standard of conduct owed by a fiduciary, including an executor who invests the funds during administration, is to be diligent and prudent, and to exercise that degree of care which prudent men of discretion employ in like matters of their own (see, *Matter of Bank of N. Y.,* 35 NY2d 512, 518-519; *Matter of Scheuer,* 94 Misc 2d 538, 543). It is not sufficient that hindsight suggests that another course of action would have been more beneficial (*Matter of Bank of N. Y., supra,* at 519; *Matter of Morgan Guar. Trust Co.,* 89 Misc 2d 1088, 1091; *see, Matter of Miller,* 116 AD2d 580, 581, *appeal dismissed* 67 NY2d 609). Here, although petitioners' investment decision was a conservative one, the record shows that it was taken after consultation with the bank's trust committee and was considered a vehicle for a reasonable return on the funds without being unduly speculative. We will not second-guess this decision. The credible evidence supports the determination of Surrogate's Court that petitioners acted prudently and conformed to the standard set forth in EPTL 11-2.2 (a) (1).

Turning to respondent's remaining argument on appeal, we find that Surrogate's Court did not err in awarding commissions to petitioners at the higher statutory rates pursuant to the amended version of SCPA 2307 which became effective on July 27, 1981 (see, L 1981, ch 803, § 2). The statute provides a schedule for awarding commissions upon "the *settlement* of the account of any fiduciary other than a trustee" (SCPA 2307 [1] [emphasis supplied]). Although petitioners herein filed several final accountings over the course of this protracted litigation, the account was not settled until the court's January 1988 decree. Therefore, despite the fact that petitioners' duty commenced prior to the effective date of the amendment to SCPA 2307, the court properly awarded commissions at the higher statutory rate since the settlement occurred after the amendment went into effect (see, *Matter of Barker,* 230 NY 364, 372; *Matter of Gottlieb,* 117 AD2d 668, 669; *Matter of Cullen,* 127 Misc 2d 105, 110).

Finally, we reject petitioners' contention that Surrogate's Court abused its discretion by assessing petitioners' counsel fees against the general estate rather than being assessed solely against respondent's share. Although petitioners may be correct in asserting that a costly delay was caused by respondent's many objections, at least one of these objections was sustained. The general rule is that compensation may be made from estate funds for services which benefit the estate *(see, Cooper v Jones,* 78 AD2d 423, 429; *Matter of Burns,* 130 Misc 2d 317, 319-320, *affd* 126 AD2d 809). Moreover, we note that the assessment of counsel fees against respondent would obviate their bequest and circumvent the charitable intent of the testator.

Decree affirmed, with costs. Kane, J. P., Casey, Levine, Mercure and Harvey, JJ., concur.