■ In the Matter of the Estate of ELIZABETH M. GRAHAM, Deceased. EDITH ARMSTRONG, as Executor of ELIZABETH M. GRAHAM, Deceased, Appellant; MICHAEL R. BURKE, Appellant, and ALICE D. ENGLISH, Respondent. [656 NYS2d 434] —Spain, J. Cross appeals from an order of the Surrogate's Court of Otsego County (Nydam, S.), entered May 2, 1995, which, *inter alia,* granted an application by petitioner's counsel to set counsel fees.

In March 1992 Elizabeth M. Graham (hereinafter decedent) died leaving a will wherein her friend (petitioner) and a cousin (respondent Michael R. Burke) were named coexecutors. The will indicated that Burke and petitioner were to serve without bond and were to split a single executor's commission. The will provided numerous specific bequests which are not at issue in

this appeal. Petitioner, Burke and respondent Alice D. English, another friend of decedent, were named residuary beneficiaries in equal shares. The will was probated on July 1, 1992 and in December 1992 petitioner commenced a discovery proceeding in Surrogate's Court against Burke regarding certain estate assets which she contends were properly part of the residuary estate and, therefore, should have been equally distributed between herself, Burke and English, to wit: cash, jewelry and stocks. After two discovery hearings, a settlement was proposed and a meeting was scheduled between Burke and petitioner at Surrogate's Court. English contends that she was prepared to attend the meeting when Philip Devine, the attorney who probated the will in Surrogate's Court, contacted her and informed her that, as he had persuaded Burke to return $114,000 to the estate, she did not need to attend the meeting. Consequently, English did not appear at the June 14, 1993 hearing at which petitioner entered into a stipulation on behalf of the estate which indicated, *inter alia*, that no further proceedings would be brought against Burke provided he return $114,000 to the estate; this stipulation was made on the record in open court.

Burke and petitioner filed an estate tax return which listed the taxable estate as $985,423.53. In the fall of 1993 the Internal Revenue Service (hereinafter IRS) audited the estate. As a result of the audit, the estate was taxed an additional $29,635.68, which included a penalty in the amount of $2,403.03 and $1,743.32 in interest. The IRS also reduced the funeral and administration expenses from the $100,086 claimed on the original tax return to $76,194, including a reduction of counsel fees from $57,750 to $45,000. On October 25, 1993, Burke challenged the assessment of the $2,403.03 penalty, explaining to the IRS, *inter alia*, that the tax return was due before the discovery proceeding was complete and, therefore, he did not know that the disputed assets were estate assets to be included in the tax return. Therefore, Burke argued, the penalty was inappropriate because the tax return was filed in good faith based on the information available at that time.

In June 1994, Devine petitioned Surrogate's Court to set counsel fees, contending that as Burke concealed assets from him while he was preparing the estate tax return, he could not accurately prepare the estate tax return and should not be penalized for the additional tax amount the estate owed. After retaining separate counsel, English moved to compel an accounting and to consolidate her proceeding with Devine's

counsel fee application. English also answered Devine's petition, requesting that Burke be stripped of his executor's commission, that all counsel fees be deducted from Burke's estate share, and that Burke be directed to pay all IRS penalties and interest. Burke moved to strike all scandalous and prejudicial material from English's answer and requested a more definite statement regarding his allegedly wrongful acts.

Surrogate's Court found, *inter alia*, that English was not on notice of the impact that the June 14, 1993 stipulation would have on her rights and potential claims against Burke, nor was she a party to the stipulation and, therefore, was not bound by it. Surrogate's Court also denied English's request that Burke be removed as co-executor, denied Burke's application to strike scandalous and prejudicial matter from English's papers, awarded Devine $24,675[1] in counsel fees plus $2,692.08 expenses, awarded Burke's counsel $11,628.04 in counsel fees and disallowed the request of Burke's counsel for additional paralegal expenses. Finally, Surrogate's Court found that both the interest and penalties imposed by the IRS were attributable to Burke's misconduct and, thus, should properly be paid as a charge against Burke's share of the executor's commission. Burke now appeals from those portions of the order which directed him to pay the IRS penalties and interest, to pay Devine $10,000 in counsel fees and which divided his counsel fees between himself and the estate. Petitioner cross-appeals from, *inter alia*, that portion of the order which denied Devine's request for expenses and also reduced his counsel fees.

Initially, we reject Burke's contention that, by permitting English to seek additional surcharges against him, Surrogate's Court violated his due process rights to rely on the effectiveness of a prior court order. Burke argues that he bargained in good faith for a full release of all claims which should be upheld, asserting that English was represented by Devine at the time of the June 1993 stipulation and had cloaked Devine with the actual and/or apparent authority to settle the matter in full on her behalf. Finally, Burke contends that, as the stipulation was entered into in open court and as there is no sufficient basis upon which to invalidate said stipulation, Surrogate's Court erred in permitting English to avoid being bound by the stipulation and then seek additional surcharges against him.

Stipulations, such as the one at issue in this case, are highly

---

1. This figure includes $10,000 which Surrogate's Court directed Burke to pay Devine for the work Devine did during the discovery proceeding, as well as payment for 164.5 hours of work done by Devine in connection with the settlement of the estate.

favored as they preserve judicial resources and, consequently, should not be set aside lightly (*see, Matter of Kanter*, 209 AD2d 365). Absent fraud, overreaching, mistake or duress, a stipulation will generally not be disturbed (*see, Hallock v State of New York*, 64 NY2d 224, 228-230; *Doppelt v Doppelt*, 215 AD2d 715). Stipulations are valid if written and signed by all the relevant parties or if made orally in open court in a proceeding where the relevant parties are either present or represented by counsel, who have actual or apparent authority to bind the client, and consent to the stipulation (*see, Weiss v Manfredi*, 83 NY2d 974, 976; *Hallock v State of New York, supra*, at 231; *Ianielli v North Riv. Ins. Co.*, 119 AD2d 317, 321, *lv denied* 69 NY2d 606).

Here, the record is devoid of any evidence, other than the bare assertions by English regarding Devine's misconduct, that the stipulation was the product of fraud, overreaching, mistake or duress. However, it would be inequitable, under the circumstances of this case, to bind English to the stipulation. The record supports the conclusion reached by Surrogate's Court that English relied to her detriment on Devine's representations that she need not appear in court; further, there is no evidence in the record to indicate that English was fully informed of the exact impact the stipulation would have on her future rights. While the record does reveal that Devine conferred with English prior to the stipulation, the exact nature of these conversations is not clear, except for the fact that Burke would be returning $114,000 to the estate. Accordingly, we conclude that Surrogate's Court did not err in finding that English was not a party to and therefore should not be bound by the stipulation.

Next, we find unpersuasive Burke's assertion that Devine could have filed an amended estate tax return once the parties determined that the alleged gifts were properly includable as taxable items in the estate. Clearly, there is no statutory right to file an amended tax return (*see, Koch v Alexander*, 561 F2d 1115, 1117). Further, although the IRS permits individuals to file amended tax returns as an administrative convenience and retains sole discretion over whether an amended return may be filed (*id.*, at 1117), nothing in the record indicates that the IRS would have accepted an amended return had Devine filed one after the June 1993 stipulation. However, an executor is under an obligation to file an estate tax return within nine months of a decedent's death (26 USC § 6075 [a]). As decedent died on March 27, 1992, the estate tax return was required to be filed by December 27, 1992.

Moreover, an executor may request an extension, not to exceed six months, within which to file an estate tax return (26 USC § 6081). While requesting a filing extension will not extend the time for actually paying any tax owed, the executor may request an extension for paying said tax, which cannot exceed 10 years (26 USC § 6161 [a] [2] [A]). Therefore, Devine could have requested an extension pending the resolution of the litigation surrounding the alleged estate property; as he failed to inquire into the possibility of obtaining an extension, in the interest of fairness, he should bear some responsibility for the penalties and interest imposed upon the estate as a result of the incorrect estate tax return which he prepared and filed. Accordingly, we conclude that the amount of fees Devine received in connection with retrieving estate funds from Burke should be reduced by $2,073.18, which is equal to one half of the $2,403.03 penalty and $1,743.32[2] interest imposed on the estate.

Next, Burke contends that Surrogate's Court erred in reducing his counsel fees. We disagree. Surrogate's Court indicated that the reduction was based upon the amount of time Burke's attorney spent on matters which solely benefited Burke and not the other individuals involved in the estate, and further that Burke's attorney aided Burke in sheltering assets from the estate. Surrogate's Court may, in the exercise of its discretion, award costs and its decision to make such an award may only be set aside if this Court determines that such an award was an abuse of discretion (30 Carmody-Wait 2d, Costs and Allowances § 167:5, at 334). Furthermore, Surrogate's Court did not err in awarding Devine $10,000 in counsel fees to be paid by Burke. This amount represented the amount owed Devine for the litigation surrounding the recovery of the $114,000 in assets which Burke withheld from the estate. Had Burke not withheld said funds, the estate would never have entered into the litigation and never incurred such legal expenses. It is not unjust for Burke to bear a " 'greater share of the financial burden placed upon the estate by [his] wrongful withholding of assets' " (*Matter of Burns*, 126 AD2d 809, 812; see, *Matter of Atkinson*, 148 AD2d 839, 842). Burke's contention that Devine's actions benefited only one party to the litigation rather than the entire estate is clearly without merit. Accordingly, Devine's legal fees, except for the $10,000 to be paid by Burke, were properly ordered to be paid from the estate funds.

---

2. Notably, Surrogate's Court found that the interest on the overdue taxes totaled $1,684.87; the actual interest imposed on the estate by the IRS was $1,743.32.

We also reject Burke's contention that Surrogate's Court erred in splitting his counsel fees between the estate and Burke personally, based on its determination that some of the work done by Burke's counsel benefited only Burke and not the estate. It is well established that counsel fees can be distributed between the estate and an individual if the attorney's work did not benefit the estate but, rather, benefited only the individual (*see, Matter of Burns, supra*, at 812). Here, much of the work performed by Burke's counsel involved the discovery litigation dealing with the issue of what assets, if any, Burke had improperly removed from decedent's estate. Burke was the primary beneficiary of his attorney's work because he was seeking to prevent the estate from reclaiming these assets; in our view, Surrogate's Court properly divided Burke's counsel's fees and directed the estate to pay only one half of said fees.

Next, we reject petitioner's contention that Surrogate's Court erred in denying Devine's request to reimburse Devine for photocopying and other sundry expenses. Determination of counsel fees is peculiarly within the discretion of Surrogate's Court after all the relevant facts are known (*see, Matter of Kinzler*, 195 AD2d 464, 467; *Matter of Freeman*, 40 AD2d 397, *affd* 34 NY2d 1). In determining the proper fee, several factors are to be taken into consideration: "the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel and the results obtained" (*Matter of Rappaport*, 150 AD2d 779, 781, quoting *Matter of Potts*, 213 App Div 59, 62, *affd* 241 NY 593). While it is true that at least one Surrogate's Court has allowed photocopying and other related expenses to be awarded as counsel fees, these expenses are not normally reimbursed from an estate (*see, Matter of Aitken*, 160 Misc 2d 587). In light of the extraordinary discretion given to Surrogate's Court in determining and fixing counsel fees, and as expenses for such things as photocopying have traditionally not been recoverable as counsel fees, we conclude that Surrogate's Court correctly denied Devine's request.

Finally, we conclude that Surrogate's Court did not err in setting Devine's counsel fees. While the estate did involve some litigation, this litigation was promptly resolved with a stipulation.

Mikoll, J. P., Crew III, Yesawich Jr. and Carpinello, JJ., concur. Ordered that the order is modified, on the facts, without costs, by reversing so much thereof as directed respondent Michael R. Burke to pay Philip Devine $14,087.90; Burke is

hereby directed to pay Devine $12,014.72; and, as so modified, affirmed.