Matter of Ellen C. Stark Charitable Trust. (2024 NY Slip Op 00007)

Matter of Ellen C. Stark Charitable Trust.

2024 NY Slip Op 00007

Decided on January 4, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 4, 2024

535123
[*1]In the Matter of Ellen C. Stark Charitable Trust. NBT Bank, N.A., as Trustee, Appellant; New York State Office of the Attorney General Charities Bureau, Respondent.

Calendar Date:November 13, 2023

Before:Lynch, J.P., Clark, Ceresia, Fisher and Mackey, JJ.

Lewis Gianola PLLC, Buffalo (Roy H. Cunningham of counsel), for appellant.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for respondent.

Ceresia, J.
Appeals (1) from an order of the Surrogate's Court of Broome County (David H. Guy, S.), entered January 7, 2022, which, in a proceeding pursuant to SCPA article 22, ordered petitioner to refund fees paid from the trust corpus, (2) from an order of said court, entered February 10, 2022, which, among other things, upon reargument, adhered to its prior decision, and (3) from an order of said court, entered February 28, 2022, which ordered petitioner to refund fees paid from the trust corpus.
Petitioner is successor trustee of a perpetual charitable trust established in the will of Ellen C. Stark (hereinafter decedent), who died in 1992. As set forth in the will, the trust's income was to be payable to two charities, New York State Natural Food Associates, Inc. (hereinafter Natural Food) and Cornell Cooperative Extension of Broome County (hereinafter Cornell). To continue receiving distributions, the trust beneficiaries were required to maintain their tax-exempt status under the Internal Revenue Code (see Internal Revenue Code [26 USC] § 501 [c] [3]). If one beneficiary were to lose that status, the will indicated that the beneficiary would no longer receive distributions and the full income of the trust would then be payable to the other beneficiary.[FN1]
In 2011, Natural Food lost its tax-exempt status, but continued to receive distributions from the trust until 2014, when it first advised petitioner that it was no longer tax exempt.[FN2] Petitioner then contacted respondent and proposed bringing a petition in Surrogate's Court to reform the trust so that Natural Food could continue to be a beneficiary. Specifically, petitioner suggested that the trust be modified such that, instead of requiring the beneficiaries to maintain tax-exempt status, the beneficiaries would be required to maintain a charitable purpose (see Internal Revenue Code [26 USC] § 170 [c] [1], [2] [B]). This, according to petitioner, would better reflect decedent's intent, who "surely . . . did not intend such a harsh result" as the disqualification of a beneficiary for losing its section 501 (c) (3) status due to, in petitioner's estimation, mere "shoddy bookkeeping" on Natural Food's part. Petitioner contended that both beneficiaries were amenable to the proposed reformation. Respondent, however, did not consent to this proposal, expressing its own belief that the terms of the trust were clear and that the alleged poor bookkeeping by Natural Food was not trivial.
After further communication did not resolve the issue, respondent brought a petition in September 2020 to compel an intermediate accounting. This was granted, and in November 2020, petitioner filed a petition for judicial settlement of an intermediate accounting for the period between July 1992 and September 2016, which included a reported $19,656.68 in legal expenses incurred. Shortly thereafter, petitioner filed a petition to reform the trust in the manner that it had previously proposed, but eventually withdrew that petition [*2]when Natural Food decided to wind down its operations. In response to the petition for judicial settlement, respondent filed objections to the payment of counsel fees, asserting that several years of legal work were missing, that the fees incurred were excessive, and that most of the legal work appeared to have been performed for the unnecessary and ultimately unsuccessful purpose of reforming the trust.
In an order entered January 7, 2022 (hereinafter the first order), Surrogate's Court directed petitioner to repay to the trust all but $5,000 of the legal fees, and to inform the court if petitioner intended to charge legal fees to the trust for work performed after September 2016. Petitioner subsequently filed an amended accounting that did not include any additional legal fees and also moved for reargument of the first order. By order entered February 10, 2022 (hereinafter the second order), the court adhered to its original determination, and again directed petitioner to file an affirmation regarding any further legal fees incurred. Petitioner then filed an attorney affirmation disclosing an additional $9,135 in legal services purportedly performed on behalf of the trust between December 2015 and November 2016, which had not previously been submitted to the court. Pursuant to an order entered February 28, 2022 (hereinafter the third order), the court held that petitioner must repay to the trust all but $2,000 of that amount. Petitioner appeals from the three above-referenced orders, and we affirm.
Initially, we turn to the first and third orders, each of which awarded petitioner a portion of its requested counsel fees. A trustee is entitled to reasonable counsel fees incurred in administering the trust (see EPTL 11.1-1 [b] [22]; Barnum v Cohen, 228 AD2d 957, 960 [3d Dept 1996]). The award of counsel fees "is a matter within the sound discretion of the trial court and will not be interfered with unless it is so manifestly wrong as to indicate an abuse of [discretion]" (Matter of Rose BB., 35 AD3d 1044, 1045 [3d Dept 2006] [internal quotation marks, brackets and citations omitted], appeal dismissed 8 NY3d 936 [2007]). "Factors to be considered in determining counsel fees include the time spent, the nature of the services, the amount involved, the professional standing of counsel and the results obtained" (Matter of Campagna, 267 AD2d 512, 514 [3d Dept 1999] [citation omitted]). It is well settled that counsel fees that do not benefit an estate or trust should not be paid out of estate or trust assets (see Matter of Greatsinger, 67 NY2d 177, 185 [1986]; Matter of Shambo, 169 AD3d 1201, 1208 [3d Dept 2019]; Matter of White [Green], 128 AD3d 1366, 1367 [4th Dept 2015]; Matter of Rockefeller, 44 AD3d 1170, 1173 [3d Dept 2007]; Matter of Graham, 238 AD2d 682, 687 [3d Dept 1997]).
We discern no abuse of discretion in Surrogate's Court's determination that reasonable counsel fees consisted of approximately one quarter of the total amount sought by petitioner[*3]. Petitioner's submissions reflected that the bulk of the legal work was dedicated to pursuing reformation of the trust, which petitioner contended was appropriate because it was likely decedent's intention to preserve the trust's own tax-exempt status by requiring that its beneficiaries be tax-exempt. According to petitioner, with that in mind, the trust's tax-exempt status could be preserved by reforming the trust while also keeping the same two beneficiaries in place. However, the will made no mention of maintaining the trust's tax-exempt status. Rather, as Surrogate's Court aptly noted, the plain wording of the will reflects that it was just as likely that decedent had a different goal, one that would have been perfectly legitimate — to ensure that her beneficiaries continued to fulfill their obligations as charities. Acknowledging that the clear and unambiguous language of the will is the best indicator of decedent's intent (see Matter of Scale, 38 AD3d 983, 984-985 [3d Dept 2007]), reformation of the trust was unnecessary. As the court also observed, it was the responsibility of Natural Food — not petitioner — to maintain its status as a beneficiary, and once Natural Food lost this status, Cornell was entitled to the full amount of the trust's distributions. To that end, while it is true that a trustee owes a duty of loyalty to the trust's beneficiaries, where there are two beneficiaries, "the trustee is under a duty to deal impartially with [both of] them" (Redfield v Critchley, 252 App Div 568, 573 [1st Dept 1937] [internal quotation marks and citation omitted], affd 277 NY 336 [1938]). By advocating for a position contrary to the express terms of the trust, and seeking to reinstate a beneficiary that had been ineligible for trust distributions for years, petitioner was acting to Cornell's detriment. It is also noteworthy that petitioner's counsel fee application failed to detail the time expended on each task, which was a factor that the court appropriately took into account (see 22 NYCRR 207.45 [a]; Matter of Drossos, 26 AD3d 602, 603 [3d Dept 2006], lv denied 7 NY3d 702 [2006], appeal dismissed 7 NY3d 807 [2006]). Thus, under these circumstances, and recognizing that only a small portion of the legal fees related to the proper purpose of recouping the overpayments to Natural Food and redistributing them to Cornell, the award of counsel fees, as set forth in the first and the third orders, should not be disturbed (see Matter of Pekofsky v Estate of Cohen, 259 AD2d 702, 703 [2d Dept 1999]).
We also find unavailing petitioner's argument that Surrogate's Court exceeded its authority in issuing the third order because it had sua sponte directed petitioner to provide proof of legal services rendered beyond the period of the intermediate accounting. Surrogate's Court "shall not fix attorneys' compensation or make allowances to parties for counsel expenses" outside of a SCPA 2110 proceeding or an accounting on notice, "[e]xcept when . . . compelling [*4]reasons exist for so doing" (22 NYCRR 207.45 [b]). The court had ordered petitioner to file an intermediate accounting in November 2020 but, for reasons that remain unclear, the accounting produced by petitioner ended in September 2016. Further, the court was uncertain as to whether petitioner had subsequently charged, or intended to charge, the trust for any additional counsel fees. In the face of these circumstances, we are satisfied that the court had a compelling reason to order petitioner to file complete proof of counsel fees.[FN3]
As for the second order, we begin by rejecting respondent's contention that this constitutes a nonappealable order, as it merely denied reargument of the first order. "Although, generally, no appeal lies from an order denying a motion to reargue, where the court actually addresses the merits of the moving party's motion, we will deem the court to have granted reargument and adhered to its prior decision — notwithstanding language in the order indicating that reargument was denied" (Matter of Manufacturers & Traders Trust Co. v J.D. Mar. Serv., 187 AD3d 1249, 1251 [3d Dept 2020] [internal quotation marks and citations omitted]). Given that Surrogate's Court considered the merits and indeed acknowledged that a factual mistake — albeit an immaterial one in the court's view — had been made in the first order, we find that the appeal from the second order is properly before us (see Matter of Aydden OO. [Joni PP.], 180 AD3d 1208, 1208-1209 [3d Dept 2020], lv dismissed 35 NY3d 996 [2020]). With that said, for the reasons discussed above, Surrogate's Court did not err in adhering to its determination as set forth in the first order.
Lynch, J.P., Clark, Fisher and Mackey, JJ., concur.
ORDERED that the orders are affirmed, without costs.

Footnotes

Footnote 1: Although not relevant here, the will also provided instructions in the event that both beneficiaries lost their tax-exempt status.

Footnote 2: In time, the three years of overpayments made to Natural Food were recouped and redistributed to Cornell.

Footnote 3: As it happened, Surrogate's Court was prudent to take this course, inasmuch as petitioner then revealed that it had charged the trust for additional legal services largely performed during the period of the intermediate accounting, which had inexplicably been omitted from that filing.