OPINION OF THE COURT
Renee R. Roth, S.
Incident to their final account, the executors of the estate of Annie Laurie Aitken ask the court to reconsider long-standing *588 principles regarding the compensation and disbursements of attorneys.
Specifically, the attorneys for the fiduciaries contend that certain of their expenses, most significantly photocopying and word processing charges, should be reimbursed from the estate as reasonable disbursements. Historically, New York courts have disallowed similar disbursements as office overhead (see, Matter of Bloomingdale, 172 Misc 218). The attorneys maintain, however, that the advent of modern technology, including photocopiers, telecopiers, word processing and computerized record-keeping, has greatly altered law firm practice and that the law must evolve to accommodate change.
Counsel state that the cost of these "services” is not included as part of the overhead used to fix hourly billing rates but rather is routinely billed as disbursements, in all departments, to the client for whom the services are performed. They contend, thus, that the allowance of these items as disbursements is not a windfall to their firm. The Surrogate’s Courts have not visited this issue since the advent of all these new devices which were undreamed of at the time the law regarding disbursements and office overhead developed. Disbursements, although small in comparison to the totality of legal fees, nevertheless represent, in the aggregate, a significant cost to law firms, especially when word processing charges are included. Clearly, the time is ripe for a reevaluation.
In fact, the Legislature recently took an important step in this area. In 1990, the statute governing attorney’s compensation, SCPA 2110, was amended to provide that services rendered by persons who are not attorneys (such as legal assistants and in-house accountants) could be considered by the court in fixing legal fees, and not treated as office overhead if the services were supervised by an attorney.
The amendment was a recognition of an economic reality. These support personnel perform many services which historically have been rendered by lawyers. The use of such employees, however, billed out at a lower hourly rate than attorneys, is more economical and results in savings to the estate.
The issue presented in this case requires a review of the nature of law firm billing practices. In this regard, it is noted that the concept of "office overhead” in the case law is often invoked but never explained. The most commonly cited decision is Matter of Zalaznick (NYLJ, Nov. 19, 1976, at 11, col 1, *589 affd 61 AD2d 772), but the mention of overhead there is merely conclusory.
The dictionary defines overhead as "the general, continuing costs involved in running a business enterprise, as of breakage, rent, furnishings, lighting, heating, taxes, insurance, office expenses, etc.” (Webster’s New Universal Unabridged Dictionary 1275 [2d ed 1979]). In theory, in the simplest example, a lawyer sets his or her hourly rate so that the rent is paid, the payroll met, the library maintained and supplies purchased, and enough remains to feed, house, clothe and educate the family with some left over for retirement and a rainy day. This amount remaining is the profit in the business. In the boom years, the profit of some law firms was high. In the present recession, some firms are barely making ends meet and others have failed entirely. The law must be flexible enough to be fair, notwithstanding the state of the economy. Furthermore, the law must apply evenhandedly to the largest law firm and the single practitioner.
Consideration of a change in the definition of what constitutes disbursements must begin with the role that hourly billing rates plays in the fixation of attorney’s compensation. Although the leading cases are clear that time is the least important factor in determining fees (Matter of Snell, 17 AD2d 490, 494; Matter of Potts, 213 App Div 59, 62, affd 241 NY 593; Matter of Kentana, 170 Misc 663, 664), that principal is invoked primarily where the value of the estate is too small to permit an allowance based on the time expended by counsel. Where there is no such concern, it is clear that since the decisions cited above were handed down, time spent has become a more important component in fixing compensation. The old method of basing legal fees on a percentage of the estate or by a comparison to an executorial commission is no longer used, presumably because of the availability of computerized record-keeping and the impact of competition for clients.
It is observed that billing rates vary and although the court does not require a uniform rate, the background and experience of counsel are components in fixing compensation. Or put another way, the appropriateness of an hourly rate is reviewed in fixing an attorney’s fee. Thus, billing rates could be increased to reflect the law firm’s costs for the services sought to be recovered as disbursements by considering them like other overhead items such as rent and insurance. Because the amounts are not large, the increased rates are likely to be *590 accepted by the courts. Indeed, as mentioned previously, the reason for the disallowance of such disbursements was the assumption that billing rates reflected the law firm’s overhead including the supporting services at issue here.
However, the attorneys, by affidavit, state that their law firm, following the practice of many firms, has "unbundled” the costs for photocopying, word processing, computerized legal research and other such services and that the allocation of such costs among the various clients actually results in a fairer system of billing. They argue that, if these costs were not allocated, the hourly rate would be raised to compensate and the burden would fall unfairly on clients whose work did not generate these disbursements.
The attorneys explain that the use of these nonprofessional services is tracked separately and billed as a disbursement. For example, computer assisted legal research is charged to the appropriate client by an entry in the computer when the service is performed; photocopying is charged in the same way, with the client’s billing number entered on the machine as it is being used; word processing is allocated automatically by way of sophisticated technology which counts the keystrokes. Surely, this is not the world that existed when the office overhead rules were promulgated. It is quite clear that there has been a substantial increase in the cost of equipping and operating a modern law office.
The guardian ad litem for a beneficiary illustrates the incongruity of the rules regarding disbursements with the following example. Under prior law, if a proceeding had 10 out-of-State respondents, it was necessary to serve them personally with citation and to pay the Sheriffs fees in their respective domiciles. Those fees were allowed as disbursements because they were similar to process server’s charges. After the statute was amended, jurisdiction over these same respondents could be acquired by mail pursuant to an order of the court. Such mail is often required by the court to be certified which would cost at least $2.29 each or $22.90 in this instance. This replaces Sheriffs fees of at least $250 (for which counsel would be reimbursed) with a $22.90 postage expense, incurred by direction of the court (for which counsel is generally not reimbursed).
The cost of computerized research (using services such as LEXIS and Westlaw) should be treated as a disbursement if the research was necessary and appropriate. As with the use *591 of paraprofessionals, the use of computers for research is highly economical and can save countless hours of lawyer time.
Charges for messengers and overnight delivery pose different concerns. Some firms routinely use these services when a stamp would be sufficient. If reimbursement by court authorization is expected, such services should not be used except where time is of the essence.
Each item in the potpourri of available resources creates different questions. For example, if the court is to allow in-house photocopies as disbursements, the sum charged must relate in some reasonable fashion to the cost of production. But the bottom line is the court’s concern, as mandated by statute, that the totality of fees and disbursements is reasonable. There is no inherent merit in any particular method of determining billings.
Where a significant portion of the bar apportions the cost of nonlegal support services directly to the client, rather than include it in the overhead component of billing rates, there is no provision in the law which requires this court to summarily disallow these charges as disbursements. Most likely, firms which do not possess the sophisticated technology to trace their costs in this manner, take instead the expense of these services into consideration in calculating their billing rates. The court does not intend by this decision to define the type of equipment that should be in a law office. But in the future, when counsel seeks to charge as disbursements various supportive services, the court will consider them if a member of the law firm with responsibility for its management affirms in writing that salaries and related costs for such services were not taken into account in computing the billing rates and that it is the normal practice of the firm to bill clients separately for these disbursements.