OPINION OF THE COURT
Diane A. Lebedeff, J.
Before the court is an application for approval of annual *856 commissions of the cotrustees of a supplemental needs trust (SNT), as well as a request for approval of disbursements by the attorney cotrustee. The commissions requested are in the modest amount of $78.75 for each cotrustee. The disbursements for which approval is requested total $172.85, comprised of duplicating, postage, facsimile transmission, and local transportation expenses. Given that the SNT provides that commissions are to be fixed under SCPA 2309, the attorney co-trustee has asked that the court consider that duplicating, postage expenses, facsimile and local travel expenses sometimes have been disallowed as separately compensable disbursements under SCPA 2307 and 2309.
To briefly set forth the background of this proceeding, Henry Soriano is a minor and, as a part of personal injury litigation, a structured settlement was reached with periodic payments to be made into the SNT with the boy’s grandmother and an attorney being appointed cotrustees thereof (order of June 18, 1996, Ramos, J.). After the grandmother moved for relief, claiming that the original attorney cotrustee was unresponsive to her inquiries for information and requests for funds, the original attorney cotrustee resigned and this Justice appointed Alfreida B. Kenny, Esq., as cotrustee (order of Mar. 19, 1997, Lebedeff, J.). Ms. Kenny’s participation was solicited by the court because of (1) Ms. Kenny’s recognized prominence in the SNT area, (2) her impeccable handling of paperwork and tax issues, and (3) her personal ability to communicate effectively with a lay family member cotrustee. Because the scheduled structure of the settlement pay-outs was already established, it was understood that commissions would be extremely modest for many years but would be higher in some years in which larger payments are scheduled. Given that the trust corpus would be relatively small, the court’s compensation plan was that the cotrustees would divide the commission and that the attorney cotrustee could charge for out-of-pocket expenses.
As the accounting shows, the trust beneficiary is now receiving monthly trust payments, a few special items are purchased as needed, and the tax situation has been regularized. The trust pays out more than one half of the income for proper beneficial purposes. The corpus is accumulating and will be available to cover future needs.
The trust at issue, a SNT, has a special purpose, which was described in Cricchio v Pennisi (90 NY2d 296, 303 [1997]), as follows: “A supplemental needs trust, or ‘SNT,’ is a ‘discretionary trust established for the benefit of a person with a severe *857 and chronic or persistent disability (EPTL 7-1.12 [a] [5]) that is designed to enhance the quality of the disabled individual’s life by providing for special needs without duplicating services covered by Medicaid or destroying Medicaid eligibility (Bill Jacket, L 1993, ch 433). Under Federal and State Medicaid laws, funds placed in a SNT are not considered resources that are ‘available’ to a Medicaid recipient for purposes of assessing the recipient’s eligibility for benefits, so long as the trust document conforms with the EPTL’s requirements * * * and further grants to the State a remainder interest in the trust assets remaining at the recipient’s death up to the amount of all public assistance provided (see, 42 USC § 1396p [d] [4]; Social Services Law § 366 [2] [b] [2] [iii]).” SNTs are established under, and remain under, court supervision (see also, e.g., Matter of Goldblatt, 162 Misc 2d 888 [Sur Ct, Nassau County, 1994, Radigan, J.]; Matter of Sutton, 167 Misc 2d 956 [Sur Ct, NY County, 1996, Roth, S.]).
Because SNT administration can involve complex issues regarding confining expenditures to proper items, it is typical in these arrangements, and is so here, that the professional co-trustee: (1) has primary responsibility for receiving income and maintaining appropriate accounts, (2) takes the lead as a decisionmaker on investment, accounting and tax issues, (3) keeps the family member cotrustee up to date on receipts and financial issues, (4) remains aware of changes in the status and needs of the beneficiary, as well as of government benefits and income received by the trust beneficiary, and (5) engages in joint decisionmaking with the cotrustee as to proper and sensible trust expenditures for the benefit of the trust beneficiary. Additionally, where, as here, the trust beneficiary is a minor, the court expects the professional cotrustee to consider whether certain expenditures are properly parental obligations (see, for an exploration of a multitude of common factual issues where the minor was subject to a guardianship under article 81 of the Mental Hygiene Law, Matter of Pineda, 168 Misc 2d 845 [Sup Ct, NY County, 1996, Lippmann, J.]).
The treatment of properly compensable disbursements under SCPA 2307 and 2309 has a rich history, and the statutory language is subject to a goodly quantity of judicial gloss. SCPA 2307 governs fiduciary compensation payable to fiduciaries other than trustees, and SCPA 2309 governs fiduciary compensation as applicable to testamentary trusts. These sections set forth slightly different commission formulas and then, in identical language, state that “the court must allow [the fiduciary] *858 the reasonable and necessary expenses actually paid by [the fiduciary].” (SCPA 2307 [1]; 2309 [1].)
These provisions are applicable, not only to Surrogate’s Court cases, but also to many Supreme Court cases. As in this instance, a SNT arising in Supreme Court personal injury or malpractice litigation frequently provides that trustee compensation for the trust will be fixed under one or the other of these two sections. Additionally, in guardianship matters, under section 81.28 (a) of the Mental Hygiene Law (Compensation of guardian), a guardian’s commissions may be, but are not required to be, “similar to the compensation of a trustee” under SCPA 2309 and many orders direct that guardian compensation be under either SCPA 2307 or 2309.
It is directly relevant to the interpretation of the phrase “reasonable and necessary” as applicable to compensable disbursements of a fiduciary that the long-established view is that a fiduciary voluntarily accepts an appointment with an awareness of the general obligations to be performed, and the direct and indirect cost of performing tasks to fulfill such obligations are covered by the percentage commission (see, Matter of Stalbe, 130 Misc 2d 725, 729-730 [Sur Ct, Queens County, 1985, Laurino, J.] [duty of attorney executor is “marshalling and securing assets, paying debts and distributing” and he or she must “absorb as overhead the cost of travel * * * telephone * * * mailing * * * [and] normal bookkeeping functions * * * including the preparation of simple tax returns” without charging separately therefor as executor or as counsel]; see also, Estate of Bozzi, NYLJ, Mar. 31, 1999, at 36, col 6 [Sur Ct, Nassau County, Radigan, J.]). The same approach has been applied to guardianship cases (see, collecting Surrogate’s Court cases, Matter of Bomba, 180 Misc 2d 977, 979-980 [Sup Ct, Queens County, 1999, Kassoff, J.] [applying “well settled” Surrogate’s Court principles and disallowing charges of attorney guardian for facsimile transmissions, photocopies, clerical service charges, local travel, and telephone, while permitting charges to obtain copies of court and public record documents, bond premium, and expenses to preserve apartment]).
Similarly, in relation to the fiduciary’s legal fees, the same traditional approach generally has limited compensable disbursements of counsel (“ [D] isbursements regularly billed out in other practice areas, for services such as photo copying and word processing, are largely disallowed for [trust and estate] lawyers on the ground that they are office overhead, a doctrine which made sense in the percentage fee universe, *859 where it developed, but which is entirely out of* * * date now when law firms almost universally charge clients for time” [Ordover and Gibbs, Surrogate’s Practice, Attorneys Fee — A New Direction, NYLJ, Dec. 29, 1999, at 3, col 1, at col 2]). Surrogate Renee Roth, noting that 1990 legislation allowing for separate billing of nonattorney time in Surrogate’s Court matters was an implied recognition that not all disbursement items in a modern attorney’s bill should be considered “overhead,” ruled that she would consider disbursement requests supported by an affirmation that “such services were not taken into account in computing the billing rates and that it is the normal practice of the firm to bill clients separately for these disbursements” (Matter of Aitken, 160 Misc 2d 587, 591 [Sur Ct, NY County, 1994]; see, adopting similar approach, Estate of Herlinger, NYLJ, Apr. 28, 1994, at 28, col 6 [Sur Ct, NY County, Preminger, J.]; see also, with modification for contingent fee cases, Matter of Sykes, 161 Misc 2d 978 [Sur Ct, Bronx County, 1994, Holzman, J.]; see, permitting disbursement for computerized research, Matter of Delancey, NYLJ, Sept. 25, 1996, at 25, col 2 [Sur Ct, Suffolk County, Prudenti, J.]; see, denying application because no showing of disbursements separate from overhead, Matter of Loguidice, NYLJ, Sept. 25, 1997, at 31, col 5 [Feinberg, J.]). Appellate courts have neither adopted nor rejected modifications to the traditional rule, observing that awards of disbursements and expenses are within the discretion of the Surrogate’s Court in relation to counsel fees (Matter of Diamond, 219 AD2d 717, 718 [2d Dept 1995]; Matter of Graham, 238 AD2d 682 [3d Dept 1997]).
In this instance, the court finds that a number of special factors are present which support approving the request for reimbursement of routine, incidental costs by this fiduciary. These factors consider: (1) the presence of a threshold showing that the costs are not embraced in overhead, (2) whether the request is consistent with the court’s plan for compensation of the trustee, (3) whether there is a change in circumstances, (4) consent or no opposition to the request, and (5) whether the request is found reasonable upon a facial examination.
First, the proper supporting showing has been made by the attorney cotrustee’s averment that each disbursement item is an expense actually incurred by the attorney and not included in overhead (see, Matter of Aitken, supra, 160 Misc 2d, at 591). If this threshold showing were not made, there would be no need to consider the application for approval of a disbursement request further.
*860 Second, the original trustee compensation plan at the time of appointment was that the current attorney cotrustee’s routine, incidental expenses would be separately compensable and not be subsumed in the statutory commission. The court and the two cotrustees discussed the projected trust operation. The professional cotrustee was to embark upon a course of providing copies of all information to the grandmother and keep her fully informed. Because such expenses were projected to be incurred by only the attorney cotrustee, such expenses could not be absorbed into the split commission structure. It was clear even then that photocopying, telephone and similar disbursements would exceed the commissions for many years. The trustee compensation provision embodied in the Trust Agreement and approved by the court states that the trustees “shall be permitted to be reimbursed for reasonable expenses incurred in the administration of this Trust” (para 9), modifying the direction in the appointing order that commissions be calculated under SCPA 2309 alone. Upon reflection, adding the phrase “including routine, incidental actual expenses” would have been a better indication of the intention of the court as to this compensation plan.
The court finds no legal impediment precluding the clear adoption of a fiduciary compensation plan which defines “reasonable and necessary” compensable disbursements as embracing more items than would be permitted by the traditional rule, which bars recovery of routine, incidental expenses. Such a plan could be adopted prior to the appointment, as was done here, or as a modification of an existing compensation plan, upon good cause shown. Indeed, the traditional rule is applied because it is seen to be as consistent with the expectations of the court and the fiduciary appointee (Matter of Stalbe, supra, 130 Misc 2d, at 729-730), in cases where no special advance determination was made and there was no basis for any other expectation. Nonetheless, the statutory phrase “reasonable and necessary” in SCPA 2307 and 2309 is facially broader than the traditional rule and, at a minimum, logically permits a court to determine at the outset of an appointment a framework defining what will be “reasonable and necessary” compensable disbursements, particularly where that framework is consistent with a recognized body of case law expanding the definition of compensable disbursements for counsel in the same type of cases. In this instance, the court found more than good and sufficient reason to frame the compensation plan set forth here: a trust sufficient in size to support the payment of actual *861 disbursements, but also so modest that commissions would be routinely de minimis; a judicial direction that the attorney co-trustee perform in a manner which placed increased costs upon that cotrustee alone; and a judicial determination that the attorney cotrustee should not suffer out-of-pocket losses by reasons of accepting the appointment. It was also determined to be to the benefit of the trust beneficiary and the trust that this compensation plan, putting disbursements on a compensable basis, would avoid the evil of a reluctant fiduciary avoiding uncompensated expenditures by not making copies of financial documents for the cotrustee and not communicating with the cotrustee. It is this court’s view that a proper fiduciary compensation plan, formulated at the outset of the appointment or upon a later sufficient showing, can help the court meet the promise of delivering proper and fulsome fiduciary performance by those persons it appoints, which is of benefit to the beneficiary, any corpus under the control of the fiduciary, the judiciary, and the public confidence in the courts. For these reasons, the court finds that the compensation plan adopted here was and is proper.
Third, when considering requests for commissions and disbursements, at least passing consideration should be given to changes in circumstances from those which existed at the time of the appointment which bear upon the compensation plan (see, e.g., Matter of Pineda, NYLJ, May 28, 1997, at 26, col 3 [Sup Ct, NY County, Lippmann, J.] [guardian compensation rate reduced, initial time-consuming issues resolved and involvement diminished]). Here, it continues to be the case that anticipated commissions are minimal in amount, that the annual projected costs of communication and other disbursements are likely, to exceed commissions, and that the trust is operating properly for the benefit of the beneficiary. Accordingly, consideration of whether the compensation plan remains appropriate indicates that it does.
Fourth, when considering the position of the parties on the application, this application has been submitted on behalf of both cotrustees and no objection is interposed. A procedural sensitivity requires that the treatment given in this court to this application be similar to the treatment given in Surrogate’s Court to trust accountings. On settlement of a fiduciary’s judicial account in Surrogate’s Court, judicial inquiry should be done sparingly where an uncontested request “appear [s] to be free of any hint of fraud or concealment” given that an inquiry can lead to “unnecessary expense and delay which [the *862 parties] are remediless to prevent” and can create “the appearance of meddling” by the court (Matter of Stortecky v Mazzone, 85 NY2d 518, 526 [1995]). This accounting is so straightforward that it suggests no need for special inquiry (compare, Matter of Stalbe, supra, for an accounting which was found facially suspect). Accordingly, great weight is given to the lack of objection to the requests made.
Finally, the application meets the test of simple reasonableness. A commission of $78.75 is objectively low compensation for the efforts undertaken and the heavy and serious responsibilities assumed by each of the SNT cotrustees. As to Ms. Kenny, it is a credit to the legal profession and a display of personal professionalism that Ms. Kenny was willing to take on the role of attorney cotrustee for a pittance.
The reasonableness of the disbursements is also easily judged, for there are no unusually high charges for telephone or facsimile communications nor local transportation. The charges are consistent with the mandate of the court regarding the quantum of communication between the cotrustees and are not facially disproportionate to the trust assets and income. The individual disbursement items do not suggest padding, overenthusiastic or otherwise suspect use of office machines, or rates consistent with “profit center” disbursement billing levels.
Taking the record as a whole, it is reasonable, fair, just and proper that the attorney cotrustee’s actual disbursements be approved. The commission requests are also found proper. Given the foregoing, the application is granted. Counsel fees of $750 are awarded on the motion, which includes a full accounting.