OPINION OF THE COURT
Howard Berler, J.
Ordered that the branch of this application by Phyllis Green-stein, the guardian and trustee of the Hope Graham supple *629 mental needs trust for an order approving the gifting of assets of the said trust to Brenda Frankenbach, as guardian of Katherine Graham, jointly with the Clerk of the Surrogate’s Court, in order to provide for education, maintenance and support is denied, and it is further ordered that the branch of this motion by counsel for the petitioner for an award of counsel fees for bringing this petition is denied, and it is further ordered that the branch of this motion by counsel for the petitioner for an award of counsel fees for other services performed since 2000 is denied without prejudice to renewal upon submission of a detailed affidavit of services setting forth the particular services for which compensation is sought, and it is further ordered that the branch of this motion by the petitioner for an award of compensation is denied without prejudice to renewal upon papers that set forth the services provided by the petitioner and that include a proposed plan for the payment of compensation.
The primary issue pending before the court is an application by a guardian and supplemental needs trust trustee for authorization to make a gift of trust assets. The Suffolk County Department of Social Services opposes the application.
Hope Graham has been adjudicated an incapacitated person pursuant to article 81 of the Mental Hygiene Law. She is the beneficiary of a supplemental needs trust with a balance alleged to be almost $244,000. Hope Graham is the mother of a 14-year-old daughter.
The petitioner is the guardian for the personal needs and property management of Hope Graham and the trustee of the subject supplemental needs trust. She has moved for an order authorizing her to make a gift for the benefit of Hope Graham’s daughter of one third of the supplemental needs trust’s principal, amounting to a little less than $90,000.[1] She further proposes that an equal sum be made available to pay nursing home costs during the resulting Medicaid penalty period.[2] 2 One third is to remain in the supplemental needs trust.
The petitioner notes that a prior dispute in this guardianship proceeding was resolved by a stipulation “so ordered” by *630 Honorable H. Patrick Leis III on December 26, 2000. By that so ordered stipulation the current petitioner was appointed as the successor guardian for the personal needs and property management of Hope Graham, and the court directed that “[phyllis] greenstein, shall submit a plan of distribution of Trust assets to the Court * * *.”[3] Thus, the petitioner asserts that the proposal to make a gift is consistent with the prior court directive, and further asserts that the specific proposal is consistent with the actual plan presented to the court at that time.
The petitioner also asserts that this proposed gift is consistent with Hope Graham’s expressed wishes and consistent with her obligation of support to her minor child. She urges the court to be guided by the principles set forth in Mental Hygiene Law § 81.21 (d), which sets forth the criteria to be considered in determining whether a Mental Hygiene Law article 81 guardian should be empowered to make a disposition of an incapacitated person’s property to or for the benefit of another person.
The Suffolk County Department of Social Services opposes the application asserting that permitting such a gift would run contrary to express terms of the trust and be contrary to the purpose for which supplemental needs trusts are established.
In support of the application the petitioner cites 18 NYCRR 360-4.5 (b) (5) (iii) (d), which requires notice to the Department of Social Services in advance of any transaction involving transfers from the principal of a supplemental needs trust for less than fair market value, as evidence that the regulations contemplate the gifting of trust assets as a possible disposition thereof. However, the court agrees with the contention of the Suffolk County Department of Social Services that this provision is included to give the Department of Social Services an opportunity to object to the transfer before it is made — not merely to make it aware of a gift.
The court notes that, at times, although a supplemental needs trust may include the statutory directive that the “trustee * * * shall, at any time and from time to time, apply for the benefit of the beneficiary, so much (even to the extent of the whole) of the net income and/or principal of this trust as *631 the trustee shall deem advisable, in his or her sole and absolute discretion, subject to the limitations [set forth in the statute]” (EPTL 7-1.12 [e] [1] [1]), trustees of such trusts often seek court approval before expending trust funds notwithstanding that such approval is not required by the trust, by statute or by rule. Such applications have included, for example, requests to purchase motor vehicles, vacations, furniture and home improvements, just as they might if the sums to be expended were guardianship funds. And, just as annual accountings are required of Mental Hygiene Law article 81 guardians (see, Mental Hygiene Law § 81.31), the courts also require oversight of trustees’ activities through accountings (see, DiGennaro v Community Hosp., 204 AD2d 259 [2d Dept 1994]; Perez v Rodino, 184 Misc 2d 855 [Sup Ct, NY County 2000]; Matter of Pace, 182 Misc 2d 618 [Sup Ct, Suffolk County 1999]; Matter of Sutton, 167 Misc 2d 956 [Sur Ct, NY County 1996]; Matter of McMullen, 166 Misc 2d 117 [Sup Ct, Suffolk County 1995]; Matter of Goldblatt, 162 Misc 2d 888 [Sur Ct, Nassau County 1994]; Matter of Morales, NYLJ, July 28, 1995, at 25, col 1 [Sup Ct, Kings County]).
The philosophy behind such treatment of supplemental needs trusts created in conjunction with a Mental Hygiene Law article 81 proceeding is explained by Justice Leone in Matter of Morales (supra), where he said (at 25, col 1):
“Special considerations arise in cases where a guardian who has been appointed for an incapacitated person seeks to establish a supplemental needs trust with the assets of such incapacitated person. The establishment of a supplemental needs trust removes the assets of an incapacitated person from the prospective arrangement of a guardianship and places them into a trust which may fail to provide adequate protective provisions. Often, such trusts contain provisions only suitable for competent persons and are wholly inappropriate for persons lacking capacity. A supplemental needs trust may not be used to abrogate or circumvent the protections of a guardianship arrangement; a supplemental needs trust must, therefore, be devised so as to incorporate the protections of the guardianship arrangement into the trust.”
Thus, it is appropriate for the court to provide oversight of supplemental needs trusts established for incapacitated persons so that the establishment of such trust does not *632 circumvent the protections afforded incapacitated persons in Mental Hygiene Law article 81 guardianships. Nevertheless, although the court agrees with the petitioner that it is natural that the trust beneficiary would want to provide for the care and support of her minor daughter, the disposition of trust assets is not governed by provisions of Mental Hygiene Law article 81.
The fact that the courts seek assurances that a supplemental needs trust’s principal is protected does not render a supplemental needs trust an asset of the guardianship estate. Accordingly, the petitioner’s suggestion that Mental Hygiene Law § 81.21 is applicable to determine the propriety of gifting trust assets is not persuasive. Such trusts are not mere paper fictions to assure availability of governmental benefits. Trust assets are not guardianship assets. The trust is a separate legal entity governed by the terms included in the trust instrument — not by Mental Hygiene Law article 81. Moreover, there is no language in the trust document placing emphasis on implementing the beneficiary’s plan or desires for the disposition of trust assets.[4] This is contrary to Mental Hygiene Law § 81.21 (b), (d) and (e), which place a premium on effectuating the incapacitated person’s wishes in making gifts of guardianship assets.
Consistent with the essence of the provisions of EPTL 7-1.12, section 2.4 of the trust provides:
“Notwithstanding the above provisions, the Trustee may make distributions to meet the Beneficiary’s need for food, clothing, shelter, health care, or other personal needs, even if those distributions will impair or diminish the Beneficiary’s receipt of eligibility for government benefits or assistance only if the Trustee determines that the distributions will better meet the Beneficiary’s needs, and it is in the Beneficiary’s best interests, notwithstanding the consequent effect on the Beneficiary’s eligibility for, or receipt of benefits.”
The petitioner contends that this language is not a proscription on the trustee’s ability to expend trust funds for a purpose *633 other than the beneficiary’s food, clothing, shelter, health care, or other personal needs. She asserts that it “simply gives discretion to Phyllis Greenstein to use hope’s trust assets for food, clothing or shelter or other needs even if government benefits are supplanted [and that it] does not limit the Trustee’s discretion to accomplish the goals set forth in the instant application.”
Even assuming that the petitioner’s construction of section 2.4 of the trust is correct, there are other trust provisions that do proscribe the exercise of the power sought. Consistent with the above-quoted EPTL 7-1.12 (e) (1) (1), section 2.0 directs the trustee to “apply for the benefit of the Beneficiary, so much of the income and principal (even to the extent of the whole) as the Trustee deems advisable” (emphasis added). The proposed distribution is not for food, clothing, shelter, health care, or other personal needs, and, thus, not for the beneficiary’s needs as defined by the trust document.
Section 2.2, consistent with EPTL 7-1.12 (e) (1) (3), directs that “[n]one of the income or principal of this Trust shall be applied in such a manner as to supplant, impair or diminish any governmental benefits or assistance for which the Beneficiary may be eligible or which the Beneficiary may be receiving” (emphasis added). According to the petitioner, the proposed plan will purposefully create a Medicaid penalty period. Therefore, it is the intention of the petitioner to diminish governmental benefits or assistance that Hope Graham is receiving. This is in direct contravention of the terms of the trust.
In addition, this latter proposition regarding the establishment of a Medicaid penalty period is questionable and an examination of the argument supports the position of the Suffolk County Department of Social Services that the proposed plan is not permissible. Social Services Law § 366 (5) (d), in describing the transfer of assets that will result in a Medicaid penalty period, does not include the transfer of trust assets over which a beneficiary has no control. Thus, if the gift is permissible, it should be so without the creation of a penalty period. This construction, however, does not simply modify the petitioner’s proposal and make it more desirable. Rather, the proper analysis is that suggested by the Suffolk County Department of Social Services as follows:
“If the trustee determines that it is in the best interest of the beneficiary to end the Medicaid eligibility that the trust insures [sic], she is free to *634 do so. The end of Medicaid eligibility would follow directly from the gift, a consequence acknowledged by the petitioner. What petitioner does not consider is the fact that once the trust ceases to service [M]edicaid eligibility, the Program’s remainder interest is due. Which means that all the money currently in the trust would have to be applied to repay the Program up to the total of assistance already granted (in excess of $500,000, as of February of 2003). Which, in turn means that there would be nothing left to ‘gift.’ ”
Moreover, there appears to be merit to the claim of the Suffolk County Department of Social Services that if the petitioner made the proposed transfer she would be subject to the scrutiny of the New York State Attorney General pursuant to Executive Law § 63 (11), which directs that the Attorney General shall: “Prosecute and defend all actions and proceedings in connection with safeguarding and enforcing the state’s remainder interest in any trust which meets the requirements of subparagraph two of paragraph (b) of subdivision two of section three hundred sixty-six of the social services law.”
Further, the court is not persuaded by the petitioner’s arguments that there is any distinction to be made between third-party trusts and self-settled trusts for the purpose of determining whether gifts of trust principal are permissible. The authorizing legislation makes no distinction in the required terms of the trusts except for the payback provisions (see, Social Services Law § 366 [2] lb] [2] [iii] [A]), which are irrelevant to a determination of whether a gift of the trust principal is permissible.
With respect to the petitioner’s contention that the proposed transfer is consistent with the plan previously put forth before Justice Leis, the court again agrees with the Suffolk County Department of Social Services. Inasmuch as it was not a party in the proceedings before Justice Leis when a contemplated gift for the benefit of Hope Graham’s daughter was discussed, the Suffolk County Department of Social Services cannot now be deemed bound by the terms of an agreement which it properly believes is unlawful.
Finally, even if it is assumed that there is no statutory or regulatory prohibition to the proposed distribution the court would not be inclined to permit the transfer. The specific proposal, by which the principal available for the benefit of Hope Graham will be diminished by two thirds, is not in her best interest, particularly taking into account the sums involved.
*635 Insofar as counsel for the petitioner seeks an award of compensation for services rendered in connection with the making of the instant application the request is denied in view of the court’s determination on the merits of such application. To the extent that counsel seeks compensation for other services rendered since 2000, the application is presently denied without prejudice to a renewed application on papers that include a detailed affidavit of services setting forth the particular services for which compensation is sought. The request of the petitioner for an award of compensation is also denied without prejudice. It may be renewed upon papers that set forth the services provided by the petitioner and, further, that include a proposed plan for the payment of compensation.

. Approval of the transaction, if any, would require that the petitioner’s figures be reconciled inasmuch as the proposed distributions exceed the alleged principal balance of the trust.

. The petitioner has not explained why, if a gift is made by a trustee, and not by the incapacitated person or her guardian, there would be a Medicaid penalty period, an issue discussed infra.

. The Department of Social Services notes that the said “so ordered” stipulation directed: “That all assets currently held by U.S. Trust be accepted by the successor Guardian only after the Court accepts and approves a new Medicaid plan.” According to the Department of Social Services no new Medicaid plan has been approved.

. Indeed, section 2.3 of the trust, which provides that the beneficiary does not have the power to assign, encumber, direct, distribute, or authorize distributions of the trust, expressly minimizes the beneficiary’s influence over determinations of how trust assets are expended, and though this section speaks of “power,” there is no tempering language directing the trustee to consider, or to be influenced by, expressed desires of the beneficiary.