Matter of Felice (2004 NY Slip Op 50009(U))

[*1]

Matter of Felice

2004 NY Slip Op 50009(U)

Decided on January 14, 2004

Supreme Court, Suffolk County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 14, 2004

Supreme Court, Suffolk County,
In the Matter of the Examination of the Annual Inventory and Account of SUSAN FELICE & THE BANK OF NEW YORK, Co-Trustees for MATTHEW RYAN FELICE, an Incapacitated Person.
INDEX NO. 20675/99

BROSNAN & HEGLER, LLP
Attorneys for Co-Trustees
1415 Kellum Place
Suite 203
Garden City, New York 11530
STEVEN M. SCHAPIRO, ESQ.
Court Examiner
Schapiro & Reich, Esqs.
325 East Sunrise Highway
Lindenhurst, New York 11757

HOWARD BERLER, J.
By a decision and order dated August 1, 2003 this Court adjourned the application by the Court Examiner to confirm his report approving the annual accounting of the Co-Trustees for a supplemental needs trust created for the benefit of Matthew Ryan Felice. The Court determined that it was empowered to review attorney's fees paid with trust funds for services rendered at the request of the Co-Trustees. The Court thereupon afforded counsel the opportunity to submit a detailed affidavit of services rendered in support of the legal fee application.
Counsel for the Co-Trustees has submitted such affidavit of services rendered, and, with the Court's permission, also submitted written argument asserting that pursuant to the terms of the trust, which were previously approved by Hon. H. Patrick Leis, the determination to pay counsel fees is left to the discretion of the Co-Trustees and is not reviewable by the Court. The Court Examiner has argued, in opposition, that the Court may review the payment of attorney's fees.
The basis for the Court's determination, that attorney's fees payable from the assets of a supplemental needs trust established for the benefit of an incapacitated person in conjunction with or incidental to a Mental Hygiene Law article 81 proceeding are subject to the scrutiny and approval of the Court, is set forth in the Court's decision and order dated August 1, 2003. Notwithstanding that it is impressed with the scholarly and comprehensive argument offered by counsel for the Co-Trustees, the Court adheres to its prior determination. Despite counsel's assertions that a supplemental needs trust is governed by applicable provisions of the Estates, Powers and Trust Law and the Surrogate's Court Procedure Act, none of which require a trustee [*2]of a supplemental needs trust to obtain prior Court approval for the payment of attorneys' fees for legal services rendered for the benefit of the trust, the Court is not persuaded that review of expenses for legal fees paid by the Co-Trustees is beyond its purview. Simply put, supplemental needs trusts established for the benefit of incapacitated individuals are, by virtue of judicial mandate and construction, a unique category of trusts. The concept that such trusts are subject to annual accountings to be approved by the Court is not set forth in the statutes, but is nevertheless well established (see, DiGennaro v Community Hosp., 204 AD2d 259, 611 NYS2d 591 [2d Dept 1994]; Matter of Greenstein (Graham), 195 Misc2d 628, 760 NYS2d 810 [Sup Ct, Suffolk County March 27, 2003]; Perez v Rodino, 184 Misc2d 855, 710 NYS2d 770 [Sup Ct, NY County 2000]; Matter of Pace, 182 Misc2d 618, 699 NYS2d 257 [Sup Ct, Suffolk County 1999]; Matter of Sutton, 167 Misc2d 956, 641 NYS2d 515 [Surr Ct, NY County 1996]; Matter of McMullen, 166 Misc2d 117, 632 NYS2d 401 [Sup Ct, Suffolk County 1995]; Matter of Goldblatt, 651 A2d 144, 162 Misc2d 888, 618 NYS2d 959 [Surr Ct, Nassau County 1994]; Matter of Morales, NYLJ, July 28, 1995, p 21 [Sup Ct, Kings County]). It is not logical to suggest that the Court, in the course of its review of the account, may notice a questionable payment of a legal fee, and be left with nothing to do but sit idly by as trust assets are wasted. It must be emphasized that "SNTs are established under, and remain under, court supervision" (Perez v Rodino, supra). Further, as noted by this Court in its August 1, 2003 order and decision, quoting Matter of Morales, supra: " 'A supplemental needs trust may not be used to abrogate or circumvent the protections of a guardianship arrangement.' "
In approving the terms of the subject supplemental needs trust, which authorizes the Co-Trustees to retain attorneys and pay the charges and expenses of such attorneys (sections 2.0(k) and 4.0(i) of the Trust), Justice Leis did not prospectively pass on the propriety of the legal fees presently under review, and did not extirpate this Court's inherent authority to review such legal fees.
The Court agrees with the Court Examiner that Stortecky v Mazzone (85 NY2d 518, 626 NYS2d 733 [1995]) provides persuasive guidance with respect to the current issue. There, despite the absence of express authority in either the statutes or the Uniform Rules for the New York State Trial Courts, the Court of Appeals concluded, in a proceeding for the judicial settlement of a final account relative to a decedent's estate, that the Surrogate's Court, having been bestowed with all the powers of the Supreme Court for such purposes (see, SCPA 209), has inherent power to supervise the fees attorneys charge for legal services, even in the absence of any objection thereto. Citing that authority, the Court in Rucciuti v Lombardi (256 AD2d 892, 682 NYS2d 264 [3d Dept 1998]) observed: "It is well established that Supreme Court has inherent power to supervise the fees charged by attorneys, even in the absence of any party's objection thereto," and that "[i]In Mental Hygiene Law article 81 matters, the court is required to fix the reasonable compensation of appointed counsel, and reductions of fee requests are not unprecedented."
This Court is aware of the following admonition of the Court of Appeals in Stortecky v Mazzone, supra, with respect to Surrogates, sua sponte, initiating inquiries into uncontested [*3]payments of attorney's fees:

. . . we recognize the potential dangers of Surrogates doing so, particularly in cases such as this which appear to be free of any hint of fraud or concealment. A Surrogate's actions in uncontested matters can cause the estate and its beneficiaries unnecessary expense and delay which they are remediless to prevent. Moreover, such inquiries may seriously damage the reputation of the attorney or executor involved by creating unwarranted suspicions of overreaching or misconduct. Indeed, the appearance of meddling may diminish the dignity of the court itself. Our recitation of these dangers should serve as a caution to Surrogates generally, that though they do not act in excess of their powers by inquiring into the contents of a settlement petition or the attorney's fees charged an estate, they must be sensitive to the prejudice which may accompany unnecessary hearings.
It may be the case that similar cautions should be applicable in judicial reviews of supplemental needs trust annual accountings. Indeed, the practice of this Court has been rarely to raise an issue with respect to such payments. The appropriate threshold for triggering judicial inquiry into attorney's fees, in light of the special consideration given to protecting the property of incapacitated persons, (see, Matter of Greenstein (Graham), 195 Misc2d 628, 760 NYS2d 810 [Sup Ct, Suffolk County March 27, 2003], supra; Matter of Morales, NYLJ, July 28, 1995, p 21 [Sup Ct, Kings County], supra), may be lower than that applicable to matters such as those specifically considered in Stortecky v Mazzone, supra. But this is a question that the Court need not attempt to resolve with precision in the current circumstances. Whatever may be the exact point at which the Court should ask for further documentation in support of a fee, or go further and undertake to modify the fee, it nevertheless should be routine practice to consider the expenditure to determine if further inquiry is warranted. The Court Examiner assigned to review the accounts acts with proper diligence when requiring counsel to submit an affidavit of services rendered to explain a legal fee paid. In the present case, as noted in the August 1, 2003 decision and order, the application before the Court was stated to be for legal fees for preparation of the 2001 annual account, yet the time records submitted reflected a claim for services rendered spanning the period from January 6, 2000 through December 31, 2001. Such an inconsistency warrants inquiry. Some services were cursorily categorized as "research" or "research re: guardianship." Charges for such vaguely described services, which often are not entitled to compensation, warrant inquiry. The total fee sought far exceeded fees generally awarded for preparation of annual accounts in such proceedings in this venue. This fact warranted inquiry.
Further, upon making inquiry, it is appropriate for the Court to seek information to allow the weighing of the relevant factors specified in Matter of Linda R. (Anonymous) (304 AD2d 832, 757 NYS2d 862 [2d Dept 2003]), Matter of Tijuana M. (Anonymous) (Pauling) (303 AD2d 681, 756 NYS2d 796 [2d Dept 2003]), and Matter of Mavis L.( 285 AD2d 509, 727 NYS2d 640 [2d Dept 2001]), which are: (1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented, (2) the attorney's [*4]experience, ability, and reputation, (3) the amount involved and the benefit flowing to the ward as a result of the attorney's services, (4) the fees awarded in similar cases, (5) the contingency or certainty of compensation, (6) the results obtained, and (7) the responsibility involved.
Accordingly, the Court shall consider counsel's affirmation of services in conjunction with the listed criteria. This submission identifies four attorneys from the firm of Brosana & Hegler, LLP, who provided services for which compensation is sought, and further notes that some services were performed by the firm's paralegals. The affirmation indicates that "we periodically render advice and perform research concerning the authority of the Trustees under the Trust provisions and applicable law, and the administration of the Trust. This alone is a concern. A large number of supplemental needs trusts are established for incapacitated individuals in conjunction with Mental Hygiene Law article 81 proceedings in this Court. Very often the trustees are family members. These individuals, with occasional assistance of their own counsel and assigned Court Examiners, successfully administer such trusts without incurring substantial legal fees. The appointment of an institutional trustee, professional and experienced, should not, logically, require an increase in the cost of obtaining information or a lawyer's advice necessary to make decisions. Counsel indicates that "[w]e also communicate and negotiate with the Suffolk County Department of Social Services ("SCDSS") concerning Matthew's continued eligibility to receive Medicaid benefits, and discuss various issues regarding Matthew's care with the Trustees." Why the institutional Co-Trustee cannot communicate directly with the Suffolk County Department of Social Services is not at all explained, and why legal counsel is called upon for input into "various issues regarding Matthew's care" is an unanswered question.
In general terms counsel indicates that the June invoice "reveals that certain legal research was performed and that a memorandum of was prepared with respect thereto. This research and memo addressed certain unusual expenditures which would be allowable by the Department of Social Services for the benefit of Matthew. To this day, there is no 'hornbook law' concerning the types of expenditures which may be made from a supplemental needs trust and not be objectionable to a particular county's office of the Department of Social Services. Accordingly, in 2000, legal research of SCDSS rulings and directives was necessary to ascsertain SCDSS' position concerning certain expenditures." This explanation is of concern to the Court inasmuch as it does not identify the expenditures in issue, or explain if, preceding the legal research and preparation of a memorandum, any inquiry was made by the institutional Co-Trustee to the Suffolk County Department of Social Services to determine if there was a disputed issue requiring legal research and preparation of a memorandum of law. This Court is aware that many questions regarding the approval of proposed expenditures from supplemental needs trusts funds can be answered or resolved by means of a simple telephone call, often without the intervention of an attorney for the trustee.
Attorney Mark J. Brosnan refers to a meeting with the Trustees he conducted on September 15, 2000 "to ascertain the amount of capital improvements which had already been made to the Bayport residence in order to confirm that the trustees were acting within the parameters of Judge Leis' Order and the express provisions of the Trust, and to ascertain the [*5]nature and extent of the improvements which reportedly still needed to be made to Matthew's residence. At this meeting, I advised the Trustees that the Trust could not make any further capital improvements to the Bayport residence at that time, because the estimated cost thereof would exceed the amount permitted by Judge Leis' Order and the provisions of the Trust." The corresponding entry on counsel's time records reflects 2.25 hours expended for: "Travel to and attend meeting with S. Felice at R. D'Aleo's office." Attorney Mark J. Brosnan seeks payment for this service at the rate of $300 per hour, although the issue involved does not appear to be a difficult one requiring any unusual level of skill to handle. Indeed, it is not at all clear why this determination could not have been made by the professional, institutional Co-Trustee without incurring a legal expense.
Regarding the attorneys' experience, ability, and reputation, the Court has been provided with information regarding the various attorneys' education and professional experience. Clearly, these attorneys bear impressive credentials and are experts in the law governing trusts.
 With respect to the amount involved and the benefit flowing to the ward as a result of the attorneys' services, while there seems clearly to have been a benefit from counsel's services, it is not clear that all, or substantially all, such benefit could not have been obtained without the services of counsel.
As previously noted, the fees sought here significantly exceed fees for preparation of annual accounts awarded in this venue. The affirmation of legal services submitted subsequent to the Court's August 1, 2003 decision and order reflects that all the services were not solely for preparation of the 2001 annual account. The fees sought for additional work relative to the supplemental needs trust exceed fees ordinarily incurred with respect to the administration of supplemental needs trusts inasmuch as it appears that trusts are ordinarily administered without the assistance of counsel to this degree.
The fee was not contingent, and until the Court's intervention herein, appeared to counsel to be certain. Finally, while there is significant responsibility in the proper administration of a supplemental needs trust, the primary responsibility should be that of the Co-Trustees, and not counsel. The institutional Co-Trustee should be capable of trust administration without securing the assistance of counsel for every administrative determination it is called upon to make.

Upon consideration of all the foregoing, it is
ORDERED that, consistent with its determination set forth in the decision and order dated August 1, 2003, the legal fees claimed for services rendered in connection with the administration and accounting of the supplemental needs trust established for the benefit of Matthew Ryan Felice are reviewable by the Court, and it is further
ORDERED that for services rendered in connection with the administration and accounting of the supplemental needs trust established for the benefit of Matthew Ryan Felice for [*6]the period from January 6, 2000 through December 31, 2001the law firm of Brosnan & Hegler, LLP, is awarded a fee in the amount of $4,775.00 [FN1], plus disbursements in the amount of $353.46. Any fees received in excess of this sum shall be repaid to the trust within twenty days after the date of this order.
The order confirming the Court Examiner's report, except as modified by this order, has been issued herewith.
Dated: January 14, 2004HOWARD BERLER 
J. S. C.
Decision Date: January 14, 2004
Footnotes

Footnote 1:1This fee is for services encompassed by the June 2, 2001 and December 14, 2001 invoices. Counsel has waived fees encompassed by the September 23, 2003 invoice, which relates to services rendered "in connection with the account proceeding."