OPINION OF THE COURT
Martha L. Luft, J.
Proceeding by means of a notice of motion, the affidavit of *896 Nancy Burner, Esq., sworn to on August 2, 2012, and. other supporting papers, John Martin, Betty Martin and Nancy Burner, Esq., as cotrustees of the John Martin, Jr. Special Needs Trust, have moved for an order amending orders confirming court examiner reports for the reporting periods from 2005 to 2010.
Also considered herein are questions raised by the Suffolk County Department of Social Services with respect to the question of whether the cotrustees improperly exercised their discretion in the spending of special needs trust assets for 2010.
John Martin, Betty Martin and Nancy Burner, Esq. are the cotrustees of the John Martin, Jr. Special Needs Trust.
Article VI (4) of the trust provides, in part: “the Trustees shall be entitled to receive the statutory compensation for services rendered hereunder as provided for under New York law
In her moving affidavit, Ms. Burner states:
“In 2005 the Court requested that the Co-Trustees come to an agreement with regard to the allocation of Trustees Commissions as pursuant to SCPA 2309 in the event of three (3) or more trustees two full commissions must be apportioned among the Trustees. The Co-Trustees signed a Stipulation of Agreement dated August 31, 2005 [a copy of which has been provided to the court]. The parties agreed that John Martin and Betty Martin would split one full commission and Nancy Burner would receive one full commission.”
Ms. Burner indicates that notwithstanding the stipulation and article VI (4) of the trust, court examiner reports for the reporting periods from 2005 to 2010 have incorrectly indicated that one commission should be paid “one-half to Nancy Burner and one-half to be divided between John and Betty Martin.”
In a responding affidavit the Court Examiner indicates that notwithstanding his errors, the errors of the court, and the errors of the cotrustees in accepting commissions in amounts less than those to which they were entitled, he is now “not in a position to oppose payment and, therefore [he does] not oppose the motion.”
Absent any further issues, the requested amendment of the prior orders confirming the Court Examiner’s reports regarding annual reports for the periods from 2005 to 2010 would be granted without the need for any additional discussion.
There is, however, another concern.
*897 Assistant County Attorney William G. Holst, Esq., on behalf of the Suffolk County Department of Social Services, and Nancy Burner, Esq., signed a “letter-agreement” dated February 3, 2010, reflecting a budget for the John Martin, Jr. Special Needs Trust. That budget lists six categories and the budgeted amount for each, as follows:
a. Van Expenses:
Gasoline $4,400
Repairs & Maintenance 500
EZ Pass & Parking 500
$5,400
b. Household Maintenance: $5,250
(not $10,500)
c. Entertainment: $500 a month or $6,000 per year
d. Personal Services: $6,000
(not to include items that should
be funded by Medicaid)
e. Companion Services: $3,500
f. Miscellaneous Clerical Supplies: $300
Reporting to the court with respect to his examination of the cotrustees’ annual report for 2010, the Court Examiner, Leon D. Lazer, Esq., noted that the cotrustees had “exceeded the budget established by the Department of Social Services in each category with the exception of companion services, which was $1,412.00 under the budget of $3,500.00.”
By a letter dated June 4, 2012, Mr. Holst objected to the expenditures that exceed the limits agreed to in the February 3, 2010 letter agreement.
The cotrustees responded to Mr. Holst’s letter by means of a letter dated June 6, 2012 from Ms. Burner in which she asserted that the Suffolk County Department of Social Services is not the trustee and the exercise of discretion is solely in the hands of the trustees.
The trust expressly states that “[i]n the administration of the Trust, the Trustees shall undertake all acts necessary to establish and maintain the Beneficiary’s eligibility for medical assistance under the Medicaid program” (article I [4]).
The John Martin, Jr. Special Needs Trust gives the trustees limited, but broad, discretion with respect to the distribution of trust income and principal.
*898 Article II (1) of the trust provides:
“The Trustees shall hold, manage, invest and reinvest the Trust Estate, and shall pay or apply the income and principal of the Trust Estate in the following manner:
“(a) During the beneficiary’s lifetime, the Trustees shall pay from time to time such amounts from income and/or principal (‘Trust funds’) for the satisfaction and benefit of The Beneficiary’s Special Needs (as hereinafter defined), as the Trustees shall determine in the Trustee’s limited discretion, as hereinafter provided.”
Article II (1) (c) of the Trust states:
“ ‘Special Needs’ is defined as JOHN MARTIN, JR’s needs that are not covered and/or available by any local, state, or federal government, or any private agencies, or any private insurance carriers covering the Beneficiary. These special needs include but are not limited to the following: . . .
“(iv) an automobile and/or van for the benefit of the Beneficiary, and modification, improvement and maintenance of such vehicle (s);
“(v) items by which the Beneficiary’s life will be enriched and made more enjoyable including, but not limited to, furniture, radios, televisions, audio, video and computer equipment, adaptive toys, electronic devices and/or equipment, and the maintenance of same;
“(vi) recreational opportunities; trips; family visits; visits to friends and/or relatives; and any other tangible or intangible items which in the sole discretion of the Trustees would enrich or benefit the Beneficiary; . . .
“(viii) the ongoing maintenance of the Beneficiary’s primary residence in the community . . . .”
The instant case brings to the forefront an issue that arises from time to time in connection with the administration of supplemental needs trusts that have been established with the approval of the court in connection with Mental Hygiene Law article 81 guardianships.
In Matter of Graham (195 Misc 2d 628 [Sup Ct, Suffolk County 2003]), the court, referencing language in a trust that was not identical to that in the current trust, observed:
“The court notes that, at times, although a supple *899 mental needs trust may include the statutory directive that the ‘trustee . . . shall, at any time and from time to time, apply for the benefit of the beneficiary, so much (even to the extent of the whole) of the net income and/or principal of this trust as the trustee shall deem advisable, in his or her sole and absolute discretion, subject to the limitations [set forth in the statute]’ (EPTL 7-1.12 [e] [1] [1]), trustees of such trusts often seek court approval before expending trust funds notwithstanding that such approval is not required by the trust, by statute or by rule. Such applications have included, for example, requests to purchase motor vehicles, vacations, furniture and home improvements, just as they might if the sums to be expended were guardianship funds.”
In Cano v Shmonie Corp. (2004 WL 6011590 [Sup Ct, Bronx County 2004]), the court addressed the role of the court and a department of social services in providing oversight for a supplemental needs trust established in connection with proceedings before the court (in Cano that being approval of an infant’s compromise order). It noted that
“[t]he plaintiffs counsel and DSS have identified a host of disputed items with respect to the negotiation of the [supplemental needs trust]. Chiefly, these issues concern the involvement of the Court in the expenditures to be made by the Supplemental Needs Trustee, especially anticipated major expenditures for housing and for a van. The position of DSS is that such matters are exclusively within the province of the Trustee, and that the Court should not intrude in this area except to prevent an abuse of discretion by the Trustee. DSS would have the Court’s role limited to passing on DSS’s potential objections to the accounts filed by the Trustee. . . . This Court has . . . required, and will continue to require, that application be made to the Court for major expenditures out of the infant’s assets, including housing and vehicles, with notice to DSS, although the Court rejects DSS’s position that all such purchases be contingent on DSS’s approval. . . . “Although the Court is sympathetic with the assertion that Supplemental Needs Trusts should not be micro-managed by the Court, there is a competing and superseding interest implicated herein, which is *900 the Court’s supervisory and protective role with respect to an infant plaintiff. Although funds which are held in a supplementary [sic] needs trust for an infant can no longer be technically considered assets of a guardianship, the Court’s responsibility to the infant does not disappear merely because the proceeds are deposited in a supplemental needs trust. The infant remains a ward of the Court, no matter what form the investment of the fiduciary funds takes. Nor can the Court accept the interpretation of DSS that the Court is somehow unconcerned with the protection of DSS’s right of recoupment of its lien, while a Trustee is automatically more protective of the interests of DSS.
“The Court also cannot delegate its oversight responsibilities to the Trustee, or to DSS for that matter, relying solely on DSS’s examinations of accounts, and on its discretionary decisions to challenge specified conduct by the Trustee — based on its limited concerns with the protection of its right of recoupment — decisions which the Court may not agree with in its broader role of protecting the best interests of the infant. The position of DSS with respect to its apparent belief that the Court should exercise no such oversight, except in response to applications brought by DSS, must be vehemently rejected. Just as a Supplemental Needs Trust may not be used to abrogate or circumvent the protections of a guardianship, Matter of Greenstein [Hope Graham] 195 Misc 2d. 628, it cannot be used to abrogate the Court’s responsibility to its infant wards. See DiGennaro v. Community Hospital of Glen Cove, 204 AD 2d 258 (Second Dept, 1994) [the Court approving a Supplemental Needs Trust must provide for Court approval of withdrawals by the Trustees, and require accountings to the Court on an annual or biannual basis].”
To this court’s knowledge, the precise role of the court in connection with overseeing a trustee’s administration of a supplemental needs trust established in connection with a Mental Hygiene Law article 81 proceeding has not been defined by any appellate authority. This court agrees, however, with the conclusion of the court in Matter of Morales (NYLJ, July 28, 1995 at 21, col 1 [Sup Ct, Kings County]) that “[a] supplemental needs trust may not be used to abrogate or circumvent the protections of a guardianship arrangement. . . .”
*901 What may be discerned from the foregoing is that notwithstanding the February 3, 2010 letter agreement signed by Assistant County Attorney William G. Holst, Esq., and Nancy Burner, Esq. (and which does not reflect that it was “so ordered” by the court in any fashion), at least for purposes of the court’s oversight, the letter agreement does not foreclose the court from independently reviewing whether the trustees’ expenditures were proper and permissible. This, of course does not foreclose the Suffolk County Department of Social Services, in proceedings relative to the administration of the Medicaid program, from reaching a conclusion that differs from the court (see generally Matter of McMullen, 166 Misc 2d 117 [Sup Ct, Suffolk County 1995]).* But, as noted, the roles and interests of the court and the Suffolk County Department of Social Services are not identical with regard to providing oversight of supplemental needs trust expenditures.
The Suffolk County Department of Social Services has elected to state its objections in the context of this guardianship proceeding. A question that the court is not now called upon to answer is whether any factual determination this court may make in the course of this proceeding would be binding upon the Suffolk County Department of Social Services, or the trustees, in subsequent administrative and judicial proceedings that may be held as part of the Medicaid oversight process.
As the Suffolk County Department of Social Services has elected to participate in the current proceeding, the court concludes that it has a right to be heard. The Suffolk County Department of Social Services has argued that expenditures have been excessive and inappropriate, particularly with regard to the question of whether the parent trustees, John Martin and Betty Martin, had an obligation to share household expenses.
To address the question of whether the trustees properly exercised their discretion to spend trust assets in 2010, or have *902 used supplemental needs trust assets for an impermissible purpose, this matter shall be scheduled for a hearing. At the hearing, the trustees shall have the burden of establishing, by a preponderance of the evidence, the justification for expenditures paid (cf. 9-117 Warren’s Heaton, Surrogate’s Court Practice § 117.04 [3]).
Presently, the orders confirming the reports of the Court Examiner regarding the annual reports for 2005 to 2010 shall be amended to reflect that John Martin and Betty Martin shall split one full commission and Nancy Burner shall receive one full commission.
The cotrustees, however, until further order of the court, shall be restrained from collecting additional compensation that would be realized through such amendments of the prior orders.
Accordingly, it is ordered that the court’s orders confirming the reports of the Court Examiner regarding the annual reports for 2005 to 2010 herein shall be amended to reflect that John Martin and Betty Martin shall split one full commission and Nancy Burner shall receive one full commission, and it is further ordered that the cotrustees are restrained from collecting additional commissions for the reporting periods from 2005 to 2010 until further order of the court, and it is further ordered that this matter is scheduled for a hearing at the Supreme Court, 400 Carleton Avenue, Central Islip, New York on January 22, 2013 at 9:30 a.m. for receipt of evidence relative to the question of whether the trustees properly exercised their discretion with respect to spending Special Needs Trust assets in 2010.

 The court need not decide here what effect the letter agreement may have in future administrative or judicial proceedings in which the Suffolk County Department of Social Services and the trustees may seek a determination of whether there has been an improper use of special needs trust assets. The Suffolk County Department of Social Services is likely to contend that the agreement is a binding limitation on the trustees’ authority to spend assets, while the trustees probably will argue that the agreement could not restrict their discretion, and that staying within the limits of the agreement would have been nothing more than a “safe harbor” for them for the purpose of limiting future objections by the Department of Social Services.